LIGHTFOOT v. DOE, ON THE DEMISE OF THE HEIRS OF RICHARD S. LEWIS.

1. In proceedings to obtain a sale of the lands of an intestate, under the act of 1822 (Aikin's Digest, 180) it is essential that the Orphans' court should make a final decree subsequently to the sale by the commissioners.

2. If such a decree is made, it cannot be impeached collaterally by showing an omission of the commissioners, to make a report of the sale as required by the fourth section of the act of 1822.

3. The title of the heirs at law is not divested until the conveyance of the estate of the intestate, after the sale made by the commissioners under this act.

Writ of error to the Circuit Court of Greene County.

EJECTMENT to recover a tract of land, described in the declaration. Plea: Not guilty.

The lessors of the plaintiff claimed title, as the heirs at law of Richard S. Lewis. The defendant, to show an outstanding title in another, offered in evidence, the transcript of certain proceedings had in the Orphans' court of Greene county, on the petition of James Wills, as the administrator of the said Richard S. Lewis, for the sale of the land which is sought to be recovered in this action, of which Lewis died seized, for the purpose of paying his debts, because of the insufficiency of his personal estate. On the filing of the petition, the following order was made:

"Ordered by the court, that the petition of James Wills, administrator of the estate of Richard S. Lewis, deceased, be received and recorded. It is further ordered, that a citation issue in pursuance of law, and be posted up at three of the most public places in the county, and inserted in the Greene County Gazette for five weeks successively, notifying all persons interested in the lands and tenements of the said deceased, mentioned in the petition, to appear before the Orphans' court, at the

court house, at a court to be held on the second Monday of November next, to show cause why said lands and tenements shall not be sold to pay the debts of the deceased."

On the 14th November, 1831, a decree was made by the Orphans' court, which recites that the citations required by law, had been issued and published in the manner prescribed by the preceding order; the decree then proceeds to order and adjudge " that the lands in the said petition mentioned, be exposed to sale at public vendue, on giving forty days notice of the time and place of sale, by advertisements posted up at three or more public places, and by five weekly insertions in the Greene County Gazette, on one years credit for all the purchase money, except the sum of two hundred dollars, and that amount to be paid at the time of selling." It was further ordered " that Obadiah W. Hampton, John Watson, and Rezin Ridgeway, be appointed commissioners to sell the lands mentioned in the petition according to, and upon the conditions before named."

At a subsequent term of the Orphans' court held on the 9th of April, 1832, it was ordered " that the note taken by the commissioners appointed to sell the real estate of Richard S. Lewis, be received and recorded, and also the receipt of James Wills the administrator of the said estate for the money arising from the said sale." The note thus ordered to be recorded, is for the sum of five hundred and three dollars, dated 31st December, 1831, payable to the commissioners named in the decree of the 14th November, on the 1st of January, 1833, and is signed by Robert L. Kennon and H. L. Kennon. The receipt is executed to the commissioners before named, for the sum of two hundred dollars, and purports to be in part payment of the lands of Richard S. Lewis, sold to Robert L. Kennon, on the 30th of December, 1831.

At a special term of the Orphans' court, held on the 27th April, 1833, on the final settlement of the estate of Richard S. Lewis, an order was made, which recites " that it appears that there is of the real and personal property of the said estate, in the hands of James Wills the administrator, after paying all debts, the sum of two hundred and ninety-nine dollars for distribution. But the

said administrator not being advised who are the heirs, or the number of them he then, by leave of the court, deposited the sum aforesaid in the hands of the clerk for distribution; and thereupon, it is ordered, that the administrator be discharged from the administration."

In addition to this record evidence, the defendant proved by witnesses, that the conditions of the decree, for the sale of the lands had been complied with in all respects, and the lands sold by the commissioners named, to Robert L. Kennon, for seven hundred and three dollars, for which he paid two hundred dollars in money, and gave the note shown in the transcript of the record for the remainder. The defendant also proved the payment of the sum of money deposited in court by the administrator on the final settlement of the estate, to three of the lessors of the plaintiff.

It was not shown that the commissioners appointed to sell the lands, had made any other return, than that shown by the transcript before recited; or that they had made any conveyance to the said Robert L. Kennon; or that any order had been made by the Orphans' court confirming the sale of the lands; or directing and requiring the commissioners to make a conveyance to the purchaser.

On this state of proof the circuit court charged the jury, that the legal title to the lands remained in the heirs of Richard S. Lewis, and was not conveyed to Robert L. Kennon by any thing appearing in the transcript of the record in evidence before them: that before Kennon could acquire the legal title to said lands, it was necessary for the commissioners who were appointed to sell the same, to have made a report of the sale: that it was essential that the Orphans' court should have made a decree confirming the sale, and ordering the commissioners to make a deed to the purchaser: and that the plaintiff had a right to recover in the absence of such a return and decree.

It having appeared in evidence that the heirs of Lewis had never been in actual possession of the lands, having always been non-residents of the State, the defendant requested the circuit

court to instruct the jury, that the proceedings by the administrator to sell the lands which were had in the Orphans' court, were proceedings *in rem*, and that court having acquired jurisdiction and control of the lands, by virtue of such proceedings, before the institution of the suit, the jurisdiction and control of the Orphans' court still continued, unless it was shown that the proceeding had been finally ended and determined by some order dismissing the same, or by some other final order; and if such proceedings were not perfect and concluded, then any person interested had a right to have the same completed; that until the Orphans' court had relinquished the control and jurisdiction of soid lands by dismissing the proceedings, or by making some final order or decree therein, it was not competent for the heirs of Lewis, nor had they any right to institute suit to recover possession of the lands; that the Orphans' court and the circuit court for certain purposes had concurrent jurisdiction over said lands, and in the exercise of this jurisdiction, the Orphans' court having acquired actual control by the institution of the proceedings before it, the circuit court had no right to interfere with or interrupt the same, so long as the proceedings before the Orphans' court, and the jurisdiction thereby acquired, continued.

The circuit court refused to give these instructions. The defendant excepted as well to the instructions given as to the refusal to give those requested, and now assigns for error the matters excepted to.

Erwin, for the plaintiff in error, insisted,

1st. That the instructions given were erroneous according to the principles settled in the case of Wyman v. Campbell's heirs, (6 Porter 219.)

2d. That the charge asked for ought to have been given. Proceedings before the Orphans' court to obtain a sale of an intestates lands, may be likened to proceedings *in rem*, and if so. the jurisdiction once acquired continues until a final disposition of the cause. The case of the Robert Fulton (1 Panie 620.)

Thornton, contra.

GOLDTHWAITE, J.—1. The proceedings had in the Orphans' court of Greene county, under which the defendant in this ejectment suit, attempted to set up an outstanding title, were instituted under the provisions of an act, passed in 1822, entitled "an act to authorize administrators to sell lands belonging to the estates of their intestates, to which a complete title has not been obtained."* (Aikin's Dig. 180, 181.) The decision in Wyman v. Campbell's heirs, (6 Porter 220,) is based on the construction of the proviso, of the act of 1820, (Aikin's Dig. 155,) but the principle of that case applies equally to all the enactments, by which the Orphans' court is invested with authority to direct a sale of a decedent's real estate; the consequence of such a sale must always be, to divest the heirs or devisees of the title. The principle then established was, that proceedings to subject the real estate of a decedent to sale, were not to be considered as the execution of a mere power, and therefore, subject to objection on account of irregularities in its exercise; but as the judgment of a court of competent jurisdiction, whenever it appears from the record of the proceedings that the events have happened, or the acts have been done, by which a jurisdiction over the subject matter has been acquired. From this was deduced another principle equally as important: that irregularities, or even actual errors, in the proceedings of such a court, cannot be examined in a collateral proceeding, but only by writ of error or appeal, or by some other mode of proceeding, acting directly and immediately on the decree.

To bring this case within the influence of the decision of Wyman v. Campbell's heirs, it is apparent that the jurisdiction of the Orphans' court should have attached to the tract of land which is the subject of controversy, and that there should have been a final decree. That the jurisdiction of the Orphans' court, attached to the land in question, is not disputed, for the petition

---

* The title of this act seems entirely foreign to its subject matter. This may be accounted for, from the fact that our titles in 1822, were mostly incomplete; or the bill, when introduced, may have been limited to titles of that description, and afterwards may have been amended so as to include all lands, whether held by complete titles or otherwise.　　　　G.

shews, that the personal estate was insufficient to pay the debts of the decedent; but it is insisted that no *final decree* was made within the terms of the act of 1822; and consequently, that if the commissioners appointed to sell, had in fact conveyed the land, their conveyance would have passed no title.

The act of 1822, authorizes the administrator of any deceased intestate, or the executor of any deceased testator, who has not power by the will of the testator to sell real estate, for the purpose of paying debts, or to make a more equal distribution among the heirs, devisees or legatees, to file a petition setting forth, that the estate of his testator or intestate is not sufficient for the payment of the just debts of such testator or intestate, or that the estate cannot be equally, fairly, or beneficially divided, &c. On the filing of this petition citations are to be issued, and certain directions are given, as to the manner in which the allegations of the petition shall be established in specified cases. When a sale is ordered by the court, commissioners are to be appointed in the order or decree, with directions to sell the estate either for money or on credit, as may be most just and equitable, and to report to the court, at the time limited in the order or decree. The petitioner is not to receive the money or bonds returned by the commissioners, until he shall give bond to account for the same, &c. On the coming in of the report of the commissioners, the court is to render a *final decree* in the cause, and if the terms of the sale have been complied with, by the purchaser of the estate, the commissioners are to be directed by such final decree to convey the estate to the purchaser.

It will be seen on examination of the statutes of 1820, (before cited,) and 1818, (Aikin's Dig. 154) that neither of them directs any proceedings by the Orphans' court subsequent to the decree for the sale. In this important particular they differ entirely from the act of 1822. The consequence of this difference is, that proceedings under the first statutes are concluded with the decree of sale, which is the final decree; but under the act of 1822, the order of sale is merely interlocutory, and the *final decree in the cause* is not pronounced until the coming in of the report of the

commissioners. When the proceedings under the act of 1818, or of 1820, have reached the decree of sale, the action of the Orphans' court is entirely exhausted, and a writ of error or appeal would lie; but under that of 1822, the court would retain the entire jurisdiction of the cause, until the further and final decree required by the terms of the statute; and until that decree was passed the cause could not be removed to an appellate tribunal. For these reasons, we arrive at the conclusion that no final decree operating on the land in controversy, was shown in evidence in the circuit court.

2. We may remark, that we are not prepared to decide that a final decree, under the act of 1822, could be impeached collaterally, even if no report was made by the commissioners of the sale, &c. for it seems this inquiry would be as entirely within the judgment of the Orphans' court, as any of the previous matters of citation or publication, which cannot be inquired into, according to the principles settled in Wyman v. Campbell's heirs.

It follows from what has already been said, that there is no substantial error in the charge of the circuit court; for notwithstanding it assumes the report of the commissioners to be as necessary as a final decree, yet as the latter was wanting, the defence could not be made out, and therefore, the error of considering the report as essential, did not prejudice the defendant.

3. There is likewise no error in the refusal of the circuit court to give the instructions asked by the defendant. The institution of proceedings to subject the real estate of a decedent to sale, through the medium of the powers intrusted with the Orphans' court, does not affect the title of the heirs or devisees in the least degree, until a conveyance has been made to a purchaser, under the decree of sale. Until that period, the title remains where the law, or the will of the decedent has cast it. These proceedings, it is true, have been compared to those had in the Admiralty and Exchequer courts *in rem*, yet it is only as to their effect in divesting the title from one, and vesting it in another, by an authorized sale, that the comparison holds. The

Orphans' court, unlike the courts of Admiralty and Exchequer, never obtains through its officers the actual custody of the property, on which its jurisdiction attaches; nor can we ascertain that it has ever been supposed that the title to lands sought to be subjected to sale, is considered as in a state of abeyance. The argument is certainly ingenious, but rests for its support on principles, which, if applicable at all, are only so as to personal estate; and on rules which have never been applied to courts proceeding, according to the course of the common law.

The judgment of the circuit court is affirmed.