## WALLACE vs. HALL'S HEIRS,

| 19 | 367 |
| 93 | 397 |
| 19 | 367 |
| 124 | 329 |
| 19 | 367 |
| 126 | 387 |

1. When a sale of real estate is ordered by the Orphans' Court on the petition of an administrator, under the Act of 1822, (Clay's Digest, 224-5) the commissioners who are appointed to make the sale have no power to execute a conveyance to the purchaser, until a final decree has been rendered confirming their report of the sale, and directing them to convey title to the purchaser; and their deed without such final decree does not divest the title of the heirs at law.

2. If a widow, before her dower is allotted to her, convey her interest in the lands of her deceased husband, the heir at law may recover in ejectment against her alience.

ERROR to the Circuit Court of Shelby. Tried before the Hon. Geo. D. Shortridge.

WHITE & PARSONS, for plaintiff in error:

Upon the petition filed and the court assuming to act upon it, the Orphans' Court acquired jurisdiction, and its proceedings, no matter how irregular, cannot be collaterally impeached while they remain unreversed.—Wyman v. Campbell, 6 Por. 219; Duval v. McLosky, 1 Ala. 708; Calhoun v. McCartny, 11 ib. 110.

This is a sale by the court and not by the commissioners, and the test of the correctness of such sales is not the action of the commissioners, but the ratification of the sale by the court.—Jennings & Graham v. Jenkins, 9 Ala. 289; Worthington v. McRoberts, ib. 299.

The sale was made, a report made to the court, and the sale confirmed.—See Worthington v. McRoberts, cited above, p. 301. The report by a majority of the commissioners was sufficient.—9 Ala. 289; 6. S. & R. 166; 5 Bin. 481; 21 Wend. 178. The order of the court adopting the report of the commissioners and making it a part of the record was such a final decree as could be appealed from. It is analogous to a sale by a master in chancery, and when such sale is confirmed by the court, it operates a change of title.—McRoberts v. Worthington, 9 Ala. 301; Duval's Heirs v. Pl. & Mer. Bank, 10 ib. 653.

In favor of a long possession and a *bona fide* purchaser, an order of the court, if held indispensable, directing the commissioners to make the deed, will be presumed.—4 N. Hamp. 321;

Wallace v. Hall's Heirs.

3 Johns. Cases, 128 ; 2 Ver. 77, 85 ; 11 S. & R. 432 ; 6 Bin.. 496 ; 11 Mass. 227 ; 1 McCord, 278 ; 3 D. & E. 152 ; 1 Har.. & Johns. 14 ; 6 ib. 361 ; 12 S. & M. 9 ; 8 ib. 255, 274, 270 ; 1 Yeates, 118 ; 10 Johns. R. 377..

The court had jurisdiction, and ordered the sale, the sale was made, the money paid by the purchaser, the sale was confirmed by the court, and a deed made to the purchaser. This sale, it. is insisted, is not absolutely void, but is valid until set aside by motion to the court in which the proceeding was had.—McLane r. Spence, 6 Ala. 894 ; Mobile Cotton Press v. Moon & Mc-Gehee, 9 ib. 679, 693 ; Jackson v. Roberts, 7 Wend. 88.

A widow is entitled to her husband's homestead, and the rents and profits accruing therefrom, until her dower is assigned her.. It is not her duty, but the duty of the owner of the fee, to become the actor in having that done.—Shelton v. Carroll, 16; Ala. 148..

An estate in dower is a freehold for the life of a dowress. If she marry, her husband is entitled to the profits, and the sole control and management of it during their joint lives. He may therefore convey it or charge it, or it may be sold under execution against him.—11 Ala. 615.

The cases of Bonner v. Greenleaf, (6 Ala. 411,) and Lewis r. Lightfoot, (1 ib. 475,) though they may seem, from a remark of the court upon a point not necessary to be decided, to be somewhat against the title of the plaintiff in error, upon examination: and comparison of the facts of the cases, will be found to be in favor of it.

E. W. Peck, with whom were Rice & Morgan, contra :

1. The possession of the premises by the defendants'' ancestor at the time of his death, under the purchase and deed from: the witness Roberson, was sufficient, prima facie, to entitle them to recover, as his heirs at law.—Smith ex. dem. Tiller v. Lorillard, 10 J. Rep. 358 ; Hylton's lessee v. Brown, 1 Wash.. Cir. Co. Rep. 204, note.

2. The title of the defendants, as heirs at law, was not divested by the proceedings in the Orphans'' Court, and the sale alleged to have been made under and by virtue thereof.. There was no final decree in the cause rendered by the court upon the coming in of the report of the commissioners. All that appears-

on this subject, is in the following words :· " This day the com-· missioners appointed to sell the real estate of Glover Hall, de-·ceased,.made a report of said sale, which·was received and or-·dered to be made of record.'"

This is no final decree ; it did not divest the title of the heirs,. or authorize the commissioners to make a deed to the purchaser.· Notwithstanding this entry,. the court might have set aside the· sale. No writ of error could have been sued out, based upon₁ this entry ; it is,. therefore,.clearly no such final decree as the· statute requires.—Clay's Dig. 225, § 21 ;· Lightfoot v. Doe *ex·dem*. The Heirs of Lewis,. 1 Ala. 475, 480–1 ;· Cummings & Cooper v. McCullough, Adm'r.,.5 ib. 324,.337 ;. at this latter· page, the court say, " the title to real estate sold by order of the· County Court; remains in the heirs of the deceased until the· court decrees a· title to be made to the purchaser,. and the title is· in fact made, notwithstanding.the court may have approved the· bond given with security for the purchase money.—See also· Pickens' Ex'rs..v. Winter's Adm'r.,.7 Ala. 864.

3. The plaintiff in error,.in the court below, to defeat the· action of the heirs at law, set up· and claimed under a deed, for· the entire premises, from Blaxton and wife, Mrs. Blaxton being: the widow of the said Glover Hall, and in connection with this deed, made an.abortive effort to prove that after the deed was· made, on his application,. the dower of. Mrs. B'axton, as the· widow of Glover Hall, had been assigned to her.

The charge on this point is right on.principle and authority;. The widow has no estate in lands of her husband, until her· dower is assigned. She has, however,.a right before assignment to occupy the mansion house, out.houses, improvements · and plantation thereunto belonging, free from rent, and this right she may enjoy,.either personally. or by tenants under her, be-·cause the possession of her tenants is her possession. But.this· right of dower cannot, by alienation,.be vested in a third person.· If the widow marry before her dower is assigned,. her husband: is not a·freeholder within the meaning of our statutes, (Weaver· & Gaines·v. Crenshaw, 6 Ala. 873,) and the reason given is,.that until her· dower is assigned,.she has no estate,. Her right is one which must be enjoyed by her ;· her.possession.must be continu-·ed:either in· herself or in her tenants.. She may make a lease,. but she cannot,.by alienation,. absolutely part with her.right to·

.the possession, and thereby invest another with it.—Jackson v. Vanderlyden, 17 Johns. R. 168; Jackson v. Aspill, 20 ib. 413.

The cases of Inge v. Murphy, (14 Ala. 289) and Shelton v. ·Carrol, (16 Ala. 148) and the cases there cited, do not militate .against this view. · It will· be seen on examination,. that none of the cases there referred to . are like this case. They are all cases where the widow was in the enjoyment of the premises, either by . herself or tenants under her; and it may be safely said that..no · case can be found, even in those States who have statutes similar to our own, where .it has been held that a widow, before her ·dower has been assigned, can sell and convey her mere right of dower, and thereby vest a title in the purchaser, by virtue of which he can maintain an action of ejectment, or defeat one brought against him by the heirs at law. The strongest case referred to is the one in 2 Mo. 163. There . the widow leased .the premises, and it was held that her tenant being ousted by a purchaser under an execution against the estate of her deceased husband, she might recover the possession by an action of ejectment. In this case, there was no alienation of the mere right of . dower, but simply an enjoyment of the right of possession by ..means of a tenant.

DARGAN, C. J.—The plaintiffs in the court below claimed : title to the land in controversy as the heirs at law of Glover Hall, . deceased, and the defendant claimed to have acquired the title by virtue of a sale directed to be made by a decree of the Orphans' Court of Shelby, which was rendered upon the petition . of John Singleton, the administrator of the decedent, Hall. .The only question, therefore, in reference to the titles, is, whether the proceedings of the Orphans' Court, and the sale under ; them, divested the title of the plaintiffs as heirs at law. The petition of the administrator sets forth that the personal estate . of the intestate was insufficient to pay his debts,. and therefore . prayed that the land be sold for that purpose. In . his petition ..he gave a description of , the land and set forth the heirs at law, ⟨who were then infants. The court directed notice to the heirs, appointed guardians ad litem for them, ..and on the 17th day of ..January, 1834, proof having been taken as in chancery causes, .a decree was rendered, ordering the land to be sold in pursuance ⟨of the statute in such cases made and provided, and by the de-

cree, Henry Robertson, William Thweate, and George B. Nashe, were appointed commissioners to sell the same to the highest bidder, for cash, and to make report to the said Orphans' Court at a term to be holden on the first Monday in March next thereafter. At the Ju'y term of said court the commissioners reported that they sold the land on the first day of March, 1834, to John Singleton, for the sum of three hundred and fifty dollars. This report was ordered to be received and recorded, but no further decree was rendered, nor were the commissioners directed to convey the land to the purchaser. They however did, on the 16th of October, 1834, execute to him a deed, purporting to be by virtue of the power in them vested by the decree of the Orphans' Court.

This is a brief statement of the defendant's title, and the only question raised on this point of the case is whether the commissioners had authority to execute the deed? That the court had jurisdiction under the act of 1822 to order a sale of the land for the reason set forth in the petition, is clear; but this act contemplates that the final decree shall be rendered, and the commissioners empowered to make titles, after their report of the sale has been returned to the court. The language of this portion of the act is, "The said court shall, upon coming in of the commissioners' report, render a final decree in the cause, and if the terms of the sale have been complied with by the purchaser of the estate, the commissioners shall be directed by such final decree to convey the estate sold, to the purchaser."—Clay's Dig. 225, § 21. We consider it as a question settled by the decisions of this court, that when the sale is ordered under this act the decree directing the sale is interlocutory, and does not give the commissioners appointed to make the sale the power to execute a deed to the purchaser. Before they can exercise this power they must make report to the Orphans' Court, upon which a confirmatory decree may be rendered, and the commissioners thereby authorized to execute the deed, But, until this is done, until a decree is rendered ordering a conveyance or deed to be executed, the commissioners have no authority to execute one, and their deed without authority does not divest the title of the heirs at law.—Lightfoot v. The Heirs of Lewis, 1 Ala. 475; Cummings et al. v. McCullough, Adm'r., 5 ib. 324, 337; Perkins v. Winter, 7 ib. 864. As it is necessary that the final de-

cree should direct the commissioners to execute a deed to the pur-
chaser in order to divest the title of the heirs, it is manifest that
the deed shown to have been executed by the commissioners in
this case does not have that effect, for it cannot be pretended
that there was a final decree directing a conveyance to be made.
At law, therefore, the title still remains in the plaintiffs, and they
must recover in an action in which the legal title alone can be
considered.

2. The defendant also showed a deed for the same land exe-
cuted by Beverly Blaxton and Emily, his wife; and it appeared
that Emily Blaxton was the wife of Glover Hall at the time of
his death, and was entitled, as his widow, to dower in the land
in question, but her dower had never been assigned or allotted to
her by metes and bounds.    After the death of Glover Hall, she
and her children resided on the land, and upon her intermarriage
with Blaxton, they both joined in a conveyance of the whole land,
purporting to convey all their interest therein for the sum of one
hundred dollars.    The question raised upon this evidence is,
whether a widow who is entitled to dower in the lands of her de-
ceased husband can sell the same under our statutes, and by her
deed enable her alienee to defeat an ejectment brought by the
heirs at law, her dower not having been assigned or allotted to
her.    Under our law a widow is entitled to retain the dwelling
house in which her husband most usually dwelt next before his
death, together with the out houses and plantation thereunto be-
longing, free from molestation, or rent, until her dower is assign-
ed her, (Clay's Dig. 173,) and we have held that she may occu-
py the premises, either in person or by her tenants, until her
dower is allotted to her, (Inge v. Murphy, 14 Ala. 289,) and
notwithstanding her second marriage, she and her husband can-
not be ejected by the heir until her dower is assigned.—Shelton
v. Carroll et al. 16 Ala. 146.    I do not intend to controvert the
propriety of these decisions.    I think they are in accordance
with a fair and just exposition of the statute, which intended
to give to the widow the means of support until her dower was
allotted to her.    It was on this ground that we held, in the case
of Inge v. Murphy, that she could occupy either in person or by
her tenant, and it was said in that case " that it might be that
she could only derive a support from the premises by renting
them, and to hold that her removal from the premises would de-

feat her right, might in many instances defeat the very object of the statute, which is a provision for the wife until her dower is allotted to her." I also think it clear that the marriage of the widow does not work a forfeiture of this statutory right. We so held in the case of Shelton v. Carroll *et al.*, but we think these decisions carry the right of the widow as far as it can legally go, and we are not disposed to press it further.

At the last term, in the case of Cook *et al.* v. Matilda Webb, we held that the widow had not such an estate in the lands of her deceased husband as was the subject of levy and sale under execution at law, before her dower was assigned her; that the right given her by our statute until dower was assigned, was personal to herself, a mere privilege to occupy the premises, and receive the profits for her support and maintenance. Now I think it clear that if she has no such estate as can be sold under execution at law, she has none that she can alienate by deed, so as to enable her alienee to defeat an ejectment by the heir at law. If she had any fixed or determinate interest or title that she could sell to another, I could see no reason why that interest could not be sold by her creditors under execution. But as it is settled that she has no such interest or estate in the premises as can be sold under execution, this is conclusive to my mind that she has no such interest or estate as she can alienate to another. If a widow, before her dower is allotted to her, sell her right or privilege to another, the heir at law may bring ejectment against her vendee and recover. The court correctly expounded the law to the jury, and the judgment must be affirmed.