# Doe *ex dem*. Hamilton *et al.* v. Hardy.

*Ejectment.*

52  291
124  266

1. *Decedent's land; jurisdiction of probate court over.* — The jurisdiction of the probate court to order a sale of a decedent's lands for payment of debts is *in rem*, and attaches upon the filing of an application by a proper party alleging a statutory ground of sale.

. 2. *Order of sale ; what will not invalidate, on collateral assault.* — Looseness or inaccuracy of pleading in the allegation of jurisdictional facts, which would be bad

[Doe v. Hardy.]

on demurrer, but capable of amendment, while the proceedings are *in fieri*, will not avoid the decree of sale when collaterally assailed.

3. *Same.* — A decree of sale cannot be avoided, on a collateral attack, because the lands were described, both in the petition and order of sale, merely by section, township, and range. In such a case it is admissible to show by parol that the lands lay within the jurisdiction of the court.

4. *Title of heir; when divested.* — The title of the heir to lands of the ancestor, sold by order of the probate court for payment of debts, is not divested until the administrator, in accordance with an order of court, conveys title to the purchaser, and without such title the purchaser cannot defend ejectment by the heir.

APPEAL from Circuit Court of Elmore.

Tried before Hon. J. Q. SMITH.

This was an action of ejectment brought by appellants against the appellee.

Appellants are the only heirs of Daniel Hamilton, who at the time of his death in 1860 was seised and possessed of the lands sued for. T. T. Wall was appointed administrator, and on the 25th June, 1860, he filed his petition in the probate court to sell the lands, describing them simply by section, township, and range, without stating in what county or land district they were situate or otherwise identifying them, and the order of sale follows the description given in the petition. The administrator alleged in his petition that " the personal property belonging to said estate (except slaves) is insufficient to pay the debts thereof, and therefore prayed a sale for that purpose, believing that it would be more advantageous to the interests of said estate to sell lands than slaves. On the 13th day of August, 1860, the day set for the hearing of the petition, an order of sale on twelve months' credit, in the mode provided by law, was granted. The order of sale after showing the appointment of a guardian *ad litem*, &c., recites that the necessity for the sale " is proven to the satisfaction of the court by the oaths of Williams Connoway and William A. Wilson, who are disinterested witnesses, and whose testimony has been taken by deposition upon direct interrogatories as in chancery courts." On the 21st day of January, 1861, the administrator reported that on the 10th of September, 1860, he sold the lands at public outcry on a credit until the first day of January, 1861, and that E. S. Ready became the purchaser at the price of $4,000. The report alleges in general terms a compliance with the statute and decree of sale, but does not affirmatively show that security was taken for the purchase-money. The same day the probate court in a decree, reciting that the sale had been made in compliance with the order, confirmed the sale. There is, however, no report of payment, no application or order to make a conveyance, and no deed from the administrator to Ready. Wall, on his annual settlement in February, 1862, charged himself with the amount of Ready's bid. Ready, in 1862, without having made payment or received a deed, sold and conveyed the lands to said Wall,

who went into possession thereunder, claiming and cultivating the lands as his own until 1867. In that year Wall sold the lands to defendant for cotton, giving bond to convey title on delivery of the cotton. Wall died in 1868 or 1869 before all the payments were made, and the balance was paid to James Wall, his administrator, who, under order of the probate court, and by virtue of the bond for title, executed a conveyance to defendant Hardy of all title and interest of said T. T. Wall. Defendant entered under his contract with T. T. Wall, and was in possession, claiming the land as his own, at the time this suit was brought on the 20th day of February, 1872.

T. T. Wall made annual settlements in 1862, 1863, and 1864, the last settlement showing the estate indebted to him in a small sum. The estate of Hamilton was duly declared insolvent on the 29th day of January, 1866, and said Wall made a final settlement on the 16th of May, 1866, on which the estate was indebted to him. Many items of the account, however, as is recited in the bill of exceptions, are " for provisions furnished the family of Hamilton at Confederate prices. No administrator *de bonis non* seems to have been appointed, or any further steps taken in the administration of Hamilton's estate. This was all the evidence. The court, at the request of the defendant, charged the jury, if they believed the evidence, they must find for defendant, and refused a written charge, asked by the plaintiffs, instructing the jury, if they believed the evidence, to find for them. The charge given and the refusal to charge as requested were excepted to, and are now assigned for error.

FITZPATRICK & GOLDTHWAITE, and R. M. WILLIAMSON, for appellants. — I. The legal title to, and the right of the immediate possession of the lands sued for, were cast upon Hamilton's heirs on his death. 12 Ala. 534; 15 Ala. 582; 21 Ala. 406. The legal title being in the heir, if his entry is not barred by some intervening particular estate or statute of limitations, he must recover *at law* despite the equitable rights of the defendant. 15 Ala. 413; 18 Ala. 185; 16 Ala. 717; 17 Ala. 412. No proceeding in the probate court short of payment, order to convey, and conveyance under order of court, could divest the title out of the heir. Section 1772 Code of 1852; 1 Ala. 481; 19 Ala. 367; 6 Ala. 413. The right of the administrator to rent lands makes it necessary that he should have *possession*, and from this flows his right to maintain ejectment. 24 Ala. 129; 10 Ala. 60. Possession by the heir is not incompatible with the proceeding to sell; the sale being a judicial sale the purchaser's title is not affected by want of possession by the administrator. 23 Ala. 419. The

[Doe *v.* Hardy.]

administrator of an insolvent estate could not maintain ejectment (until a statute conferred the power) because he had no authority to rent.   21 Ala. 419.   The power to sell existed as fully before authority to rent was given as it does now.   If an *application* to sell defeats the heir's title, it must have been equally so under the old statutes.   As already shown, the power to rent does not affect power to sell; and to say that because the administrator may maintain ejectment to exercise his power to rent, that therefore his *application to sell* must have an effect denied it before power to rent was given, is a perfect *non sequitur.*   No estoppel can be sustained, in this proceeding, because the administrator was charged with Ready's bid.   34 Ala. 591.   A purchaser at administrator's sale, before conveyance ordered and executed, is in no better plight than that of a purchaser with bond for titles, who, although he may have paid the purchase-money, cannot defend ejectment by the vendor.   33 Ala. 91; 22 Ala. 207; 17 Ala. 749; Ib. 411.

II.   The sale is void.   The lands are not described so as to enable any court to ascertain where they lie.   25 Ala. 482; *Smitha* v. *Flournoy*, and *Mosely* v. *Turnipseed*, do not apply. In those cases facts were stated from which the court could judicially know the location of the lands.   The statement that the necessity for sale was proven by deposition taken as in chancery cases, &c., is insufficient.   It is a mere conclusion of law — drawn by a court of *limited* jurisdiction.   40 Ala. 252; 36 Ala. 604.

WATTS & TROY, and SUTTLE & KYLE, *contra.* — I.   The question in this case is narrowed to this: Had the heirs of Hamilton, at the commencement of the suit, the legal title and the right of immediate possession of the lands?   Under our statutes the lands descend to the heirs only *sub modo*, not absolutely and *eo instanti* as at common law.   The title descends to the heir subject to the *paramount right* of the administrator to sell for payment of debts, division, &c.   10 Ala. 50; *Patten* v. *Crow*, 26 Ala. 426.   The administrator's right for either purpose, under our statute, is *paramount* to the heir's. The rents must go to him if he requires it.   He may maintain ejectment to recover lands against heirs or third parties.   26 Ala. 426; 10 Ala. 493; 41 Ala. 292; 45 Ala. 272; 36 Ala. 348.   The only logical vindication of the power of the administrator of a solvent estate to maintain ejectment by force of his statute powers over the real estate is, that whenever he claims rent or undertakes to sell for payment of debts the *legal title*, with right of possession — right of entry — is vested in him.   Without this, ejectment cannot be maintained.   30 Ala. 211.   If the legal title be only *suspended* by the assertion of

[Doe v. Hardy.]

the statutory power by the administrator, the heir's right of entry — his right of immediate possession — certainly must be *divested* when the administrator asserts his rights. Else how can the administrator maintain ejectment, without either legal title or right to possession? To allow the heir to bring ejectment against the purchaser where the administrator has exercised his paramount statutory right over land and sold it on a credit, is to allow the subordinate right to annihilate the paramount right, and plainly tends to defeat the very purposes of the statute giving the paramount rights to the administrator, who is a trustee for creditors, whose rights are higher than those of the heirs. The case of *Wallace's Heirs* v. *Hall* (19 Ala.), and the case of *Walker* v. *Murphy* (34 Ala. 591), are not inconsistent with these views. The commissioners under the old statutes were "mere officers of court," not possessing the power of the administrator. The old statute expressly declared title should not pass until deed made, and these decisions were made under it; since then the administrator's powers have been greatly enlarged.

II. *Smitha* v. *Flournoy* (47 Ala.) disposes of the objection as to description of the land; even if it did not, plaintiff must recover on the strength of his own title. The decree reciting the necessity for sale was proved by deposition taken as in chancery, &c., is sufficient on collateral attack. 28 Ala. 218; *Satcher* v. *Satcher*, 41 Ala. 26; 7 Ala. 584; *Smitha* v. *Flournoy, supra.*

BRICKELL, C. J. — The jurisdiction of a court of probate to decree a sale of lands descended to heirs is statutory. It is *in rem*, not *in personam*, attaching whenever an application is made by a proper party disclosing the existence' of facts authorizing the decree. Jurisdiction having attached, errors or irregularities intervening in the course of the proceeding do not affect the validity of the decree, when collaterally assailed. The decisions on this point are numerous, and too well known and recognized by the profession, to require a citation of them.

There are doubtless errors and irregularities in the proceedings of the court of probate, on which a decree for the sale of the premises in controversy was rendered, which would have compelled an appellate tribunal to reverse it. The petition is loosely drawn, and could not on demurrer be deemed pleading, averring the facts on which the jurisdiction of the court depends. Its insufficiencies and defects are all amendable, and could have been cured while the proceedings were *in fieri*. Amendable defects of this character cannot, when the decree

is collaterally assailed, justify a sentence of nullity. Before such sentence is pronounced, the want of jurisdiction, not its irregular exercise, should be manifest. The adoption of any other principle would impair the value and dignity of judgments, and would practically nullify the statutes which prescribe a short period as a bar to an appeal or writ of error to revise them.

The appellants insist the decree of sale is void, "because the petition failed to describe the lands accurately. The description being only by section, township, and range, the court could not know that they were in this State even, or if in the State, in what land district or county." The inaccuracy exists not only in the decree, but in the application for the sale, and the record does not supply the evidence to correct it. This objection was capable of amendment, while the proceedings were in progress to a final decree, and could have been made a ground of reversal on appeal to this court. If an appeal had been prosecuted, and the decree reversed because of this defect, the cause would have been remanded to the court of probate, and an amendment would then have been allowed curing the defect. If a deed or grant had the same defect apparent on its face, and it became necessary to identify the premises, parol evidence would have been received to show the true location of the premises. The same evidence is admissible now, to show that the lands ordered to be sold are within this State, and of consequence within the jurisdiction of the court. If the lands ordered to be sold in fact lie without the State, the decree is a mere nullity, not casting a cloud on the title of the heirs. This objection has several times been preferred to this court, as a cause for invalidating decrees of sale, rendered by courts of probate, and has been invariably repudiated. *Smitha* v. *Flournoy*, 47 Ala. 345 ; *De Bardelaben* v. *Stoudenmire*, 48 Ala. 643 ; *Mooney* v. *Turnipseed*, January term, 1873 ; *Wright* v. *Ware*, June term, 1873. There would be but little security in judicial sales, and in titles resting upon them, if they could be avoided because of such defects, which would have been matter of correction of course and of right, at any time before the sale was decreed. The statute now furnishes an easy and expeditious remedy for the correction of such defects after the sale, whenever they are discovered. R. C. § 2128.

The decree is assailed, not because it does not show that the ground of sale was proven by depositions taken as in chancery cases, for the decree expressly recites, that the necessity of sale is " proven to the satisfaction of the court by the oaths of Williams Conoway and William A. Wilson, who are disinterested witnesses, and whose testimony has been taken by depo-

[Doe v. Hardy.]

sitions upon direct interrogatories as in chancery courts," but because the decree "fails to show the facts from which the conclusion results that the evidence on which it was based was taken as in chancery proceedings." In other words, that the statement that the depositions were taken as in chancery courts is the statement of a conclusion from facts, and not a fact, and that the court should have stated the particular facts, that it might be ascertained whether the proper conclusion was drawn. There is no merit in the objection. The court certainly had jurisdiction to ascertain and declare whether the depositions were taken in conformity to the mode of taking depositions prevailing in courts of chancery. It has exercised the jurisdiction, ascertained and declared the fact, and its determination cannot be collaterally impeached.

The objections urged to the sale and its confirmation, all refer to matters occurring after the jurisdiction of the court had attached. The most that can be said for them is, that they are errors or irregularities. Certainly they are not an excess or usurpation of jurisdiction, which would affect the decree of sale collaterally. If they exist, and are prejudicial to any party in interest, there are remedies appointed by law for their correction.

It does not appear from the record that the administrator had reported to the court of probate the payment of the purchase-money, nor that the court had directed a conveyance of the title to the purchaser, or that such conveyance had been made. Until a report of the payment of the purchase-money, an order of the court of probate directing a conveyance and a conveyance in pursuance of such order, the legal title to lands descended remains in the heirs, who may maintain ejectment for their recovery. This has been too often asserted by this court to be regarded as an open question. *Lighfoot* v. *Lewis*, 1 Ala. 475 ; *Cummings* v. *McCullough*, 5 Ala. 324 ; *Bonner* v. *Greenlee*, 6 Ala. 411 ; *Wallace* v. *Hall*, 19 Ala. 367. These decisions rest upon the clear ground, that the legal title to the estate cannot be in abeyance. On the death of him in whom it resides, it descends to his heirs, or passes to his devisee, and there resides until divested by an appropriate judicial proceeding, which invests it in another, or is transferred by alienation. A judicial proceeding does not operate its divestiture until another is clothed with it. A conveyance decreed and executed is essential to the investiture of another.

In the absence of evidence that there had been a decree of the court authorizing a conveyance to the purchaser, and a conveyance executed in pursuance of such decree, the appellants were entitled to a recovery on their legal title. If there

are equities resting in the purchaser which will render the recovery valueless to them, they must be asserted in a court of equity — of them a court of law cannot take cognizance.

The court erred in the charge given, and in the refusal to charge as requested, and the judgment must be reversed and the cause remanded.