# Ketchum and wife, Administrators v. Creagh, et al.

### Bill to enforce Vendor's Lien.

1. *Title to land of decedent; when divested out of heirs.*—The title to land sold, on credit, under order of the probate court for distribution, is not divested out of the heir until a conveyance is executed under order of the court, after ascertaining that the entire purchase money has been paid.

2. *Same.*—Until full payment, the statutes require the retention of the title as security for the purchase money. The personal security required, is merely cumulative; it may fail, or all legal and equitable remedy for its enforcement may be barred, without in any manner affecting the security afforded by the retention of the title.

3. *Purchaser at sale; what title takes.*—The purchaser at such a sale takes but an inchoate equity, which on full payment of the purchase money ripens into a perfect equity, entitling him to a conveyance under order of the court, or a resort to equity to divest the title of the heirs.

4. *Same.*—Until the execution of the conveyance, the purchaser having only an equity can transfer an equity only. His assignee or alienee purchases, at his peril, subordinate to the legal title, charged with full notice of it, and burthened with every charge resting on his assignor.

VOL. LIII.

[Ketchum v. Creagh.]

5. *Same ; what will not defeat vendor's lien.*—Alienees or sub-alienees of a purchaser, who has not paid the entire purchase money, cannot defeat the right of the administrator to subject the land, in their hands, because the administrator failed to coerce payment out of the purchaser, when it could have been done by diligent pursuit of legal remedies.

6. *Cross-bill; when necessary.*—As a general rule a defendant in chancery can obtain no other relief on his answer, than the dismissal of the bill. If he have any other relief to seek, touching the matters in the original bill and necessary to its complete determination, he must come in by cross-bill.

7. *Cross assignments of error ; when disregarded.*—Cross assignments of error not made in accordance with the rules, will be disregarded.

APPEAL from Chancery Court of Wilcox.

Heard before Hon. CHARLES TURNER.

Appellants, Ketchum and wife, filed their bill on the 10th day of June 1868, as administrators *de bonis non* of A. M. Creagh, dec'd., and as individuals, against appellees, to subject certain lands formerly belonging to A. M. Creagh to the payment of the purchase money.

A. M. Creagh died intestate in the year 1854, and his widow Willie S., and a son, M. W. Creagh, were appointed administrator and administratrix, and duly qualified as such in the same year. On their petition the probate court ordered a sale of land for distribution among the heirs, and at a sale made under this order on the 18th day of December 1857, John W. Creagh, another son, became the purchaser, giving notes at one and two years, with approved security for the purchase money. The sale having been duly reported to and confirmed by the probate court, possession was given the purchaser, but no title was ordered to be executed and none has been executed since. The purchaser paid the first note at maturity, but failed to pay the second in full, although large payments were made upon it. In 1860, Creagh sold a portion of the land to one Benjamin Glover and executed a conveyance to him. Glover in 1867 sold portions of the land to A. L. Morgan and Nathaniel Glover. John Creagh exchanged or sold the balance of the land, purchased at the sale in 1857, to M. W. Creagh, who in turn sold it to one J. D. Richards, taking a mortgage on them to secure the purchase money, and this mortgage he afterwards assigned to England and Brooks.

Before the filing of the bill, Mrs. Willie S. Creagh, widow of the intestate, intermarried with appellant Ketchum, who was appointed administrator *de bonis non*, in place of her co-administrator who had resigned, and the two had settled with two of the distributees of the estate, and owned their shares as individuals.

At the filing of the bill one of the sureties on the purchase money notes was dead, and Creagh and the other surety

[Ketchum v. Creagh.]

were insolvent. Creagh and the various sub-purchasers were made defendants to the bill, which prayed a reference to ascertain the amount due upon the purchase money and a sale of the lands to pay it.

The defence interposed by the defendants was that they were *bona fide* purchasers, without notice of the unpaid purchase money, &c., and that the entire purchase money had in fact been paid by John W. Creagh.

From the evidence, which is voluminous, it appears that Creagh told Glover and others that he had paid the entire purchase money. It is also shown that the complainants knew of Glover's sale to the other defendants, and gave no notice of the lien or made any efforts to have the purchase money applied to the extinguishment of the amount due on the note held by them. One of the complainants testified, that when John W. Creagh left the county several years after the sale, he carried with him $100,000 in money, but no effort was then made to compel payment out of him. Creagh claimed that he had paid what was due upon the note, by leaving his distributive share of the estate in the hands of the administrators, but the testimony showed that his distributive share had been exhausted in paying the first note.

The chancellor (Hon. A. W. Dillard) held that although the distributees could not lose their right, on account of the failure of the administrators to enforce the lien for the purchase money, yet the administrators, so far as they were individually concerned, should not have any aid from a court of equity ; that as they had stood supinely by for years, and allowed sub-purchasers to pay over the purchase money to Creagh without giving them any notice, it was equitable that loss should fall on them, and he therefore decreed that the distributive shares of the two distributees, which were the individual property of the administrators, as well as John W. Creagh's share, should be deemed a credit upon the note, as if paid by said Creagh, and that the balance remaining unpaid constituted a lien for which the land might be sold, when the proper amount was ascertained. Upon the coming in of the report of the register made upon this basis, the chancellor (Hon. Charles Turner,) confirmed it and decreed a sale. This decree is now assigned as error. Reference is made in the opinion to cross assignments of error ; but they do not appear upon the bound transcript which has come into the reporter's hands.

COCHRAN & DAWSON, for appellant.

S. J. CUMMING & J. Y. KILPATRICK, *contra*.
VOL. LIII.

[Ketchum v. Creagh.]

BRICKELL, C. J.—The bill was filed by the appellants, to enforce a lien for the purchase money on lands sold by them in their representative capacity, under a decree of the court of probate. The statutes authorizing such sales require that if the purchase money is payable in the future, the purchaser·shall give bonds or notes for it, with two sufficient sureties. R. C. §2228. Though such security is given, the title can not pass until the purchase money is paid—the fact of payment made known to the court, and a conveyance ordered. R. C. §§ 2096 and 2228. Until a conveyance is executed under a decree of the court of probate, the title remains in the heir, who may maintain ejectment against the purchaser, or any one entering under him. *Lightfoot* v. *Lewis*, 1 Ala. 475; *Wallace* v. *Hall*, 19 Ala. 367. As to the purchaser, the decree of sale is interlocutory, until a conveyance of title is decreed. The plain purpose of the statutes, is, that the title shall not pass until the purchase money is paid. It remains, capable of assertion, a security for the purchase money, independent of, and distinct from the personal security required of the purchaser. The personal security, is merely cumulative, in addition to the security afforded by the retention of the title. It may fail, or all legal or equitable remedy for its enforcement as a personal liability, may be barred, but the title, and the security its retention affords, will not be impaired thereby. The purchaser takes but an inchoate equity, ripening into a perfect equity on the payment of the purchase money. Having paid the purchase money, he may under the statute on application to the court of probate, obtain a conveyance, or, he may resort to a court of equity, to compel a divestiture of the title, which has descended to the heirs.

The purchaser having only an equity, if he assigns, or aliens, can transfer an equity only. The assignee, or alienee, taking a mere equity, purchases at his ·peril, subordinate to the legal title, charged with full notice of it, and is burdened with every charge resting on his alienor or assignor. *Shiras* v. *Craig*, 7 Cranch. 34; *Vatlier* v. *Hyde*, 7 Pet. 271; *Boone* v. *Chiles*, 10 Pet. 211. It is well settled that a purchaser of a legal estate, who can not make out a title but by a deed, leading him to another fact, whether by description of the parties,.recital or otherwise, will be deemed cognizant thereof; for it is *crassa negligentia,* that he does not inquire after it. 2 Sugden on Ven. 778; *Witter* v. *Dudley*, 42 Ala. 616; *Johnson* v. *Thweatt*, 18 Ala. 741. On the same principle, the purchaser of an equity, cannot be heard to deny notice of the legal title. The state of his vendor's title puts

[Ketchum *v.* Creagh.]

him on inquiry as to the legal title, and the extent to which the equity he acquires is burdened with it. He cannot claim any other or greater right than his vendor had—he must be content to stand in his shoes. The rule is, that a purchaser with notice is bound to the same extent, and in the same manner, as the person of whom he purchased. 2 Sug. on Ven. 749.

It is difficult under the facts of this case, to believe those claiming as alienees of the vendee, at the sale made by the appellants, had not full notice of the state of the title—of the fact, that the purchase money had not been fully paid. The fact was so easily ascertained—the want of pretence that the vendee asserted any other title, than that which he derived from his purchase of appellants—the absence of any evidence, or inquiry for evidence, that his purchase had been completed by the payment of the purchase money, seem to us inconceivable with any supposition that those claiming under him had not full knowledge of the state of his title, and did not rely on his removing the incumbrance created by the unpaid purchase money. If they were ignorant, their ignorance was gross negligence, and they must bear the consequences of it. They were not, as the chancellor seems to have supposed, entitled to any notice from the appellants of the fact that the purchase money was unpaid, and that for its payment a lien on the lands was claimed. The law charged them with as full notice of these facts, as any the appellants could have given them. Nor is it material that the appellants could by a diligent pursuit of legal remedies, have obtained satisfaction of the purchase money from their vendee. They were under no obligation to the alienees, or those claiming under the vendee, to pursue such remedies. They had a right to rely on the security the retention of the title afforded. As well might the vendee himself claim the title, because by the passiveness of his vendor, until the lapse of time barred all remedy at law for the recovery of the purchase money, as for his alienees, who stand in his shoes, to claim any priority over the vendor, because neglecting legal remedies, he chooses to rely on the lien the law gives him. The alienees if not acquiesing in this neglect to pursue legal remedies for the purchase money, could have paid it, and entitled themselves to such remedies, which they could have prosecuted with all the diligence allowed by law.

As a general rule, a defendant by answer can pray nothing but to be dismissed by the court. If he has any relief to pray, or discovery to seek, he must do so by a bill of his own. If it touches the same matter, as that embraced in the

original bill, and is necessary to procure a complete determination of such matter, then a cross bill is his remedy. *Cummings* v. *Gill*, 6 Ala. 562; *Goodwyn* v. *McGehee*, 15 Ala. 232; *Gallagher* v. *Witherington*, 29 Ala. 420. If John W. Creagh, as an heir at law, was entitled to a distributive share of the money sought to be recovered by the appellants, his alienees would be entitled to set off such share against the appellants. This relief could be obtained only on cross bill, and none has been filed. The clear preponderance of the evidence in the record, is, that he is not entitled to such share—that it was fully accounted for to him, when he made payment of the first note due for the purchase money of the lands.

The appellants are entitled to a lien on the lands for the entire balance due on the note of John W. Creagh, described in the pleadings, and the chancellor erred in not so decreeing.

Cross assignments of error by some of the appellees, appear on file. They do not seem to have been filed in accordance with the rule, and we cannot consider them.

The decree is reversed, and the cause remanded, to be proceeded with in conformity to this opinion.