# Dugger *et al. v.* Tayloe *et al.*

*Bill in Equity by Infant Heirs at Law, to enforce Vendor's Lien on Lands sold by Administrator under Probate Decree, and set aside Decree for Conveyance to Purchaser.*

1. *When heirs or distributees may maintain bill in equity, against debtors of estate.*—The general rule is, that neither creditors, distributees, nor legatees can maintain a bill in equity against debtors of the estate, to subject the debts to the satisfaction of their demands; and if there is an exception to this general rule, where a debtor has, by fraud and misrepresentation, induced the administrator to accept worthless notes and bonds in payment of a debt, and the administrator is insolvent, the complainants must show the existence of a debt which the administrator himself could recover.

2. *Sale of land by administrator, under probate decree; vendor's lien, as against sub-purchaser.*—A sub-purchaser of lands sold by an administrator under a probate decree, who contracts with the original purchaser for a portion of the lands, is not a debtor of the administrator, nor of the estate: if the administrator or heirs attempt to subject the lands so bought by him to the payment of the original purchase-money, an equity at once arises in his favor to have the other lands first subjected; and if the heirs have released the original purchaser from all liability on account of his purchase, with a reservation of the right to assert against the sub-purchaser their title to the lands bought by him, they can not assert against him a vendor's lien for any portion of the original purchase-money.

3. *Same; decree ordering conveyance to purchaser.*—When lands are sold by an administrator, under a probate decree, for equitable division, the title of

[Dugger et al. v. Tayloe et al.]

the heirs or devisees is not divested, until the purchase-money has been paid, and a conveyance has been executed to the purchaser under the decree of the court, which decree may be rendered on the application either of the administrator or of the purchaser (Code of 1876, § 2468); and when the application is made by the purchaser, although notice to the heirs is not necessary, notice to the administrator is indispensable: and a decree rendered without notice to him is absolutely void, at law as well as in equity. (Overruling *Dugger v. Tayloe*, 46 Ala. 320.)

APPEAL from the Chancery Court of Hale.

Heard before the Hon. A. W. DILLARD.

The bill in this case was filed on the 31st October, 1873, by Hobart C. Dugger and Mrs. Alice V. Sprague, who sued by her husband as her next friend, two of the children and heirs-at-law of Henry Dugger, deceased; against Henry A. Tayloe, Willis P. Bocock, and Robert L. Maupin; and against Mrs. Alice G. Dugger, the widow of said decedent, who was sued individually, and as administratrix of the estate of John W. Dugger, one of their children, and as guardian of the complainants; and against the other surviving children of said Henry Dugger. It sought to vacate and set aside a decree, rendered by the Probate Court of Marengo county, on the 21st March, 1868, by which a conveyance of certain lands, which had been sold by said administratrix of Henry Dugger's estate, under a former order or decree of said court, was ordered to be made to said Willis P. Bocock, as the purchaser at that sale; and to enforce a vendor's lien on a portion of the lands, containing one hundred and ninety-six acres, which was in the possession of said Tayloe and Maupin.

Henry Dugger died, intestate, in 1852, at his residence in said county of Marengo, in that portion of the county which now forms a part of Hale county; and left him surviving, as his heirs-at-law and the distributees of his estate, his widow and eight children, whose names, ages, residences, deaths, &c., were stated in the first paragraph of the bill, showing that all parties interested in his estate were brought before the court. The said decedent died seized and possessed of a certain tract of land in said county, embracing the lands involved in this suit, which were described in the bill as "the south-east quarter of section thirty (30) and all of section thirty-one (31) lying north of the Selma and Meridian railroad, all in township eighteen (18), range four (4), east, containing one hundred and ninety-six acres, more or less;" which lands descended to his children as heirs-at-law, free from any claim of dower on the part of the widow, who had by contract released her right of dower. Letters of administration on his estate having been granted to the widow, but at what time does not appear by the record, she filed

[Dugger et al. v. Tayloe et al.]

her petition in the Probate Court of said county of Marengo, on the 3d September, 1860, asking an order to sell all the lands, for the purpose of making an equitable division, or distribution, among the heirs. The order of sale was granted on the 22d October, 1860, and the lands were sold under the order on the 19th November following. The sale was reported to the court by the administratrix on the 12th January, 1861, stating in her report that said Willis P. Bocock was the purchaser, and had given his notes for the purchase-money according to the terms of the sale; and the sale was confirmed by the court, at its April term, 1861. These facts were stated in the bill, but the petition, order of sale, report, &c., are no where set out in the bill or exhibits. After the close of the war, the heirs having brought an action at law to recover the lands, Bocock filed his petition in said Probate Court, on the 21st March, 1868, alleging that he had paid the whole of the purchase-money according to the terms of the sale, and had never received a conveyance of the lands, and asking that a deed might be executed to him under the order of the court. The court granted the order, on the same day the petition was filed, and appointed a commissioner to execute a deed to said Bocock; and a deed was executed to him accordingly. The heirs having failed in the action at law, they brought the case to this court by appeal; and the judgment of the court below was affirmed by this court, at its June term, 1871, as shown by the report of the case.—*Dugger v. Tayloe*, 46 Ala. 320. The bill in this case was afterwards filed. Its material allegations, on which equitable relief as to these matters is sought, are contained in the following paragraphs:

4. "Said Alice G. Dugger was the administratrix of said Henry Dugger's estate; and as such, on the 3d September, 1860, filed her petition in the Probate Court of Marengo, from which her said letters of administration were derived, praying the order of said court to sell said lands, together with all other lands of said decedent, for distribution, the said estate being then free from debt; and on the 22d October, 1860, said court ordered said lands to be sold; and on the 19th November, 1860, she so sold the same, and Willis P. Bocock became the purchaser of the whole of the lands belonging to said estate, including the land hereinbefore specifically named, at the price of $45.01 per acre, on a credit of one, two, and three years, with interest from date of sale. The said lands so sold and purchased by said Bocock amounted altogether to six hundred and forty acres, his bid amounting in the aggregate to the sum of $28,806.40; for which he executed his three notes, with F. S. Lyon and

[Dugger et al. v. Tayloe et al.]

H. W. Reese as sureties, payable to Alice G. Dugger as administratrix of said Henry Dugger, deceased, dated the 19th November, 1860," and payable on the 19th November, 1861, 1862, and 1863, respectively; "and said sale was reported by said Alice G. Dugger to said Probate Court on the 12th January, 1861, and was confirmed at the April term of said court, 1861; but no deed was made to the purchaser until some time thereafter, as hereinafter stated."

5. "Although said Willis P. Bocock was the ostensible purchaser of the whole of said lands, yet, by some arrangement between him and said Henry A. Tayloe, made before or at the time of said purchase, said Tayloe obtained by the understanding with Bocock, the one hundred and ninety-six acres before mentioned, and undertook with said Bocock to pay the purchase-money for the same at the rate aforesaid, and said Tayloe went into, and has since had the possession thereof." "Said Maupin having, for some years past, resided on the land with said Tayloe, as part of his family, has participated with said Tayloe in the occupation of, and planting on the same; but your orator and oratrix do not know upon what terms said Maupin participated with said Tayloe in the possession of said lands."

6. "Neither said Bocock, nor any one else, has ever paid the purchase-money evidenced by said notes, or any part thereof, according to the terms of his purchase, or in any manner, except as hereinafter stated; and the purchase-money for said one hundred and ninety-six acres, with interest thereon, remains unpaid."

7. "Said Bocock took up the said two notes first falling due, with Confederate States treasury-notes; and the said note last falling due he took up, by handing over to Mrs. Alice J. Dugger bonds of the Confederate States. Your orator and oratrix, who were then infants, state, upon information and belief, that Bocock and the defendant Henry A. Tayloe together urged the said Alice G. Dugger to accept said Confederate notes and bonds in payment of said Bocock's notes, at a time when all her children who were of age were absent from home; and the said Alice G. received such Confederate notes for the note first falling due, without remonstrance; she reluctantly yielded, and received the Confederate notes for the note secondly falling due; but, when they urged her to accept the said treasury-notes, or Confederate bonds, for the last note, she peremptorily refused to accept said Confederate notes and bonds, which were then really almost worthless, in payment of said note, and for a long time continued to refuse, and sent the said Bocock and Tayloe away without taking the offer. But she had great

confidence in and esteem for said Bocock and Tayloe, who were her neighbors, and were men of high character; and they brought great pressure to bear on her, to induce her to take Confederate notes and bonds. They represented to her that, if she refused to take Confederate money in payment of said note, she would be ruinously taxed by the Confederate government, and would be made to pay the tax in gold; and they, or one of them, reported her refusal to the Confederate tax-collector, who called on her, and told her he was informed of her refusal; and finally, under great pressure, under protest, and unwillingly, said Alice G. Dugger very reluctantly yielded, and took said Confederate bonds, and gave up to said Bocock said last note. The sons of said Alice G. Dugger, then of age, were absent in the army."

8. "Said Alice G. Dugger never would, and never did, report to said Probate Court of Marengo that the purchase-money for said lands, so sold by her as administratrix, had been paid, but purposely abstained from so doing; and shortly after the war ended, your orator and oratrix, then infants, with the other heirs-at-law of said Henry Dugger, deceased, and said Alice G. Dugger, brought their action at law, in the nature of an action of ejectment, to recover said six hundred and forty acres of land; and anticipating that said Bocock would make some effort to obtain a conveyance of said lands from said Probate Court, your orator and oratrix, with said W. W. Dugger and L. W. Dugger, filed their protest, or *caveat*, in said court, on the 12th May, 1866, protesting against and objecting to any confirmation of the sale, or order to make titles, on the ground that the sale was without any valid or lawful order of said court, and that said sale was unauthorized and void, and that the entire purchase-money had never been lawfully paid."

9. "After the filing of said protest, or *caveat*, and while said action was pending in the Circuit Court of Marengo by the heirs-at-law of said Henry Dugger, deceased, and Alice G. Dugger as a purchaser of the interest of one of said heirs, against said Bocock and Tayloe, said Bocock did, for the express purpose of defeating said action at law, on the 21st March, 1868, file his petition in the Probate Court of Marengo, a copy of which is hereunto attached, as a part of this bill, marked 'Exhibit B;' wherein he represented and stated, that he had paid the whole purchase-money for said lands, when in fact he had never paid it, nor any part thereof, otherwise than in Confederate States treasury-notes and bonds, as already herein set forth in detail; and further setting forth in his petition, that said Alice G. Dugger had not reported such payment, though more than a reasonable time

had elapsed for her to have done so; and praying that an order for a conveyance of said lands to him might be made. And said Probate Court, notwithstanding said protest and *caveat* filed by said heirs long before that time, and which was then on file, and without notice to the administratrix, or to any of said heirs, and without the knowledge by them of said application, and upon *ex-parte* proof made by said Bocock, did appoint H. A. Woolf, a brother of the judge of said court, and an entire stranger to the estate, having no interest therein, or knowledge of the affairs thereof, to execute titles to said Bocock; and said Woolf, in compliance with said order and decree of said court, made conveyances of said lands to said Bocock, without notice to, or knowledge by the administratrix. Said petition was filed by Bocock, and said decree for titles to him was rendered, in vacation, and on Friday, when there was no regular or adjourned term of said court. The decree was rendered on the same day the petition for titles was filed, and your orator and oratrix insist that said decree for titles is void; and said proceedings were had without notice to, or knowledge by the said heirs, or to their counsel, whose name was indorsed on the *caveat* filed by him as their attorney of record, of any of the proceedings; and the said action at law by the heirs was defeated by the production of said conveyance, on the ground that the remedy was by direct proceedings in chancery to impeach said order or decree."

10. "After said Bocock had obtained said conveyance, to-wit, on the 11th June, 1868, he and the said Alice G. Dugger, W. W. Dugger, R. W. Dugger, L. W. Dugger, and your orator and oratrix, who were then infants, entered into a compromise respecting so much of said land as was embraced by said sale, except the one hundred and ninety-six acres sought to be subjected by this bill, and of the money due therefor; a copy of which contract is hereunto appended as a part of this bill, marked 'Exhibit C;' and your orator and oratrix, since they have become of age, have ratified, and do ratify said compromise; but the rights of your orator and oratrix, respecting said one hundred ninety-six acres of land, are not touched by said agreement, but are expressly excepted therefrom; and upon effecting said compromise, said action was restricted to said one hundred and ninety-six acres."

11. At the April term, 1864, of said Probate Court of Marengo, Mrs. Dugger "made what purports to be a final settlement of her administration of said estate, and charged herself, or was charged, with the whole of the purchase-money of said six hundred and forty acres of land, as so

much lawful money; and it nowhere appeared in the record of said settlement that she had only taken Confederate notes and bonds. On said pretended final settlement, she was charged with a balance of $40,170.40, after due credit for all debts of the estate, which she had in fact paid before said sale, and for all costs, charges, and expenses of administration, leaving that sum for distribution among the heirs; and the decree of said court," a copy of which is appended as an exhibit, "recites that the distributive share of each of said heirs and distributees is one-eighth of said sum; which said sum of $40,170.40 is, to the extent of $37,220.14, composed of said land-money, and the sum of $3,804.72, interest thereon to the time of said pretended settlement, charged against said administratrix."

12. L. W. Dugger, R. H. Dugger, F. E. Dugger, and W. W. Dugger were of lawful age when said decree was rendered; and the bill charges, on information and belief, that they "did not question, but abided by said decree, nor have they claimed or received anything thereunder; but your orator and oratrix were then infants, and do not consent to the abandonment of their rights to the purchase-money of said one hundred ninety-six acres of said land, or to look to their mother therefor, to the exoneration of said land. Said decree further recites, that said Alice G. Dugger was then guardian of your orator and oratrix, who were then minors, and had charged herself with their respective shares; but she never in fact received said sums, and no final decree is rendered in her favor as their guardian, against her as administratrix, for said sums; and your orator and oratrix insist that said decree was not final as to their rights,—merely reciting that it appears, by reference to her accounts as guardian, that she had charged herself as guardian with said sums."

13-14. Complainants "have never sought to enforce said decree against said Alice G. Dugger, and have never assented to the receipt of said Confederate notes and bonds, and have never received any part of them, nor derived any benefit from them." They were minors when said decree was rendered. Mrs. Dugger, and the sureties on her bond as guardian, "are unable to respond to said decree."

15. On the sale of said lands by the administratrix, "said Bocock and Tayloe each went into possession of his portion of the same,—said Tayloe going into possession of said one hundred and ninety-six acres, and said Bocock of the remainder of said lands; and said Tayloe's possession has since been retained by him alone, or in conjunction with said Maupin. Your orator and oratrix have but imperfect knowl-

[Dugger et al. v. Tayloe et al.]

edge or information of the exact arrangement by which said Tayloe obtained the same, or whether he has the same in his own name, or in the name of some other person; and they pray that said Bocock, Tayloe and Maupin may answer, and set forth how and in what manner the same was acquired, and is held by them, or either of them; and what said Tayloe and Maupin, and each of them, paid for it, and in what sort of money or currency; and your orator and oratrix state, upon information and belief, that the Confederate currency and bonds, with which said Bocock took up his notes, was furnished by said Tayloe, to the amount of the purchase-money of said one hundred and ninety-six acres; and that said payment, though made in Bocock's name, was in fact, to the extent of the amount due for said one hundred and ninety-six acres, made by said Tayloe."

16. " Said Tayloe paid nothing for said lands, except Confederate money and bonds, which were not a valuable consideration as against your orator and oratrix, who were then minors; and they further say, that said Tayloe well knew that said Bocock had paid only Confederate notes and bonds for said lands; and they charge, on information and belief, that he participated with said Bocock in said wrong and injury to your orator and oratrix; and they show that said Maupin is the son-in-law of said Tayloe, and lives with him— that he married the daughter of said Tayloe in 1864, or 1865, and that he has no title to said lands, and is not a purchaser for value, and acquired whatsoever rights he may have with full knowledge or notice that nothing but Confederate notes and bonds had been paid for said lands."

The 17th (and last) paragraph of the bill alleged that Tayloe was insolvent, that the lands were wholly insufficient to pay the amount due to the complainants, and that an application of the rents and profits to their demand was necessary for their security; and the prayer for relief was added, as follows: " To the end therefore that an account may be taken of the amount due to your orator and oratrix respectively, as their several portions of the money arising from the sale of said one hundred and ninety-six acres of land, as heirs-at-law of said Henry Dugger, deceased, and as heirs-at-law of said John W. Dugger, deceased; and that the payment of the same may be enforced against said one hundred and ninety-six acres of land, and against the rents thereof, to accrue from the filing of this bill; and that said lands may be sold therefor, and that the decree for titles to said Bocock, and the deed made thereto, may be held void, or, if not, that it may be set aside, or held to be subordinate to the lien of your orator and oratrix; and that your orator

and oratrix may have such other and further relief, as may seem proper, and as justice may require," &c.

The compromise, or release, mentioned in the 10th paragraph of the bill, is in these words : "This agreement, made and entered into this 11th day of June, 1868, by and between Willis P. Bocock of the first part, and Alice G. Dugger, W. Waverly Dugger, Reuben H. Dugger, L. White Dugger, Alice V. Dugger, and Hobart C. Dugger, parties of the second part, witnesseth : That in full and final compromise and settlement of the claims between the parties aforesaid, touching and concerning their claims and rights in and to the lands hereinafter mentioned, and of the suits between them in respect thereto, and of the damages, rents, and mesne profits, the said parties of the second part hereby agree to execute a deed, and thereby grant and convey unto the said party of the first part a good title in fee simple to a certain parcel of land described as the south-west quarter of section thirty-one (31), in township eighteen (18), range four (4), and three-eighths of the north half of the same section, to be taken off the southern part of said half section, by a line running east and west across the entire section ; all situate and being in the county of Hale, State of Alabama. And the said Willis P. Bocock agrees to execute, together with his wife, a deed of conveyance, and thereby release and forever relinquish to the parties of the second part all right, title, and claim of himself and wife, in and to the residue of the said north half of section thirty-one (31), saving and excepting so much thereof as lies north of the Selma and Meridian railroad, which is claimed by one Henry A. Tayloe, and amounts to thirty-six and 43-100 acres, or thereabouts ; but the said party of the first part is to retain possession of the said land, free of rent, until the first day of January next, or until the crop growing thereon shall be gathered ; and the said party of the first part further agrees to pay to the said Alice G. Dugger the sum of two thousand dollars, for the benefit of the parties of the second part. And the party of the first part is hereby discharged from any and all claims which the parties of the second part, or any or either of them, may have against him, for any use and occupation of, or trespass to any lands ever owned by the parties of the second part, or either of them, whether the same were used and occupied by him or by any other person. But nothing herein contained shall in any manner impair or affect any right, title, or claim, of any or either of the parties of the second part, to any lands in the possession of said Henry A. Tayloe, or to rents and damages for the use thereof by said Tayloe, or to any action pending against said Tayloe. And

Alice V. Dugger and Hobart C. Dugger being minors under the age of twenty-one years, the parties of the second part further covenant and agree that the said infants shall, as they respectively become of age, or within a reasonable time thereafter, fully ratify and confirm any deed executed by them, or either of them, under this agreement. And it is hereby further stipulated and agreed, by and between all the parties aforesaid, that the lands which are to be conveyed as aforesaid, by the party of the first part and his wife, shall remain bound for the fulfillment of the several matters and things to be done and performed by the parties of the second part, or any or either of them; and the party of the first part shall, and he hereby retains a lien thereon, for his indemnity, notwithstanding any deed he may execute in relation thereto. In testimony whereof," &c.

The defendants demurred to the bill, for want of equity, on the following grounds : 1. "That it is an attempt, in a collateral proceeding, to impeach a final decree of the Probate Court of Marengo county,—a court having jurisdiction in the matter of the sale of the lands in said bill described." 2. "That it shows that the lands in said bill mentioned were sold under a decree of the Probate Court of Marengo county,— a court having jurisdiction in the premises; that a petition for said sale was duly presented and filed in said court, setting forth the grounds of said sale, as required by law; and the jurisdiction of said court for said purpose thereby attached, and said decree was conclusive, and can not be collaterally impeached." 3. "That it shows that the purchase-money for said land was paid by the purchaser, and received and accepted by the administratrix in said bill mentioned; and that said purchase-money was, on the final settlement of said administratrix, under a decree of the said Probate Court of Marengo, distributed among the several distributees of said estate of Henry Dugger, deceased; and that the guardian of complainants received and charged herself, as such guardian, with the amounts of the shares of the complainants respectively; and complainants fail, in said bill, to offer to refund the same, or the value thereof." 4. "That it shows on its face, and in 'Exhibit D' thereto attached, that Alice G. Dugger, the administratrix therein mentioned, made a final settlement of the estate of her intestate in 1864, and was discharged in the Probate Court of Marengo county; at which settlement, complainants were represented by guardians *ad litem ;* and said bill fails to make any allegation of fraud, or to show any excuse why said final settlement was not appealed from." 5. "Said bill shows on its face that complainants had a full, adequate, and complete remedy at law."

(33)

The chancellor sustained the demurrer, on the fourth ground specially assigned, and dismissed the bill; and his decree is now assigned as error.

SMITH & ROULHAC, for appellants.—1. The bill does not seek to set aside the decree for the sale of the lands, but, admitting its validity, seeks to enforce a vendor's lien on the land for the unpaid purchase-money. Until the purchase-money is paid, there remains in the vendor a lien on the land for its security; and a court of equity enforces it on the principles which apply to trusts.—2 Story's Equity, § 1217, note 4; *Foster v. Trustees of Athenæum*, 3 Ala. 302; 5 Porter, 452; 50 Ala. 379; *Hutton v. Williams*, 35 Ala. 503; *McIntosh v. Reid*, 45 Ala. 460. The law enforces the lien in favor of an adult vendor, who, in the exercise of his free will, with the capacity to make his own contracts, has sold and conveyed by absolute deed, retaining no security for the purchase-money; *a fortiori*, it would seem, the court ought to interfere to protect the rights of helpless infants. The title to the lands vested in the complainants, instantly and absolutely, on the death of their ancestor; and it could only be divested, during their infancy and incapacity, by the action of some judicial tribunal, clothed with the power to do so in certain cases, and for certain specified purposes; and when that power is exercised by the court in any given case, an equitable lien for the purchase-money exists in their favor, until full payment is made.

2. Under the allegations of the bill, the purchase-money has not been paid. The land was sold in 1860, before Confederate currency had any existence, and hence it could not have been in the contemplation of the parties to the sale.— *Cameron's Adm'r v. Hudgens*, 50 Ala. 379; *Horn v. Lockhart*, 17 Wallace, 570. Nor are there any "special circumstances" in this case, as in 50 Ala. 379, *supra*. The sale was not made for the payment of debts; in which case, the debts being paid, the distributees of the estate would have received an equivalent for their lands, and would have suffered no injury. It was made for distribution among the heirs; the administratrix was the mere agent to conduct the sale; and she had no more right to receive Confederate money, than she would have had to receive $20 per acre, from a purchaser who had bid $50.

3. But the bill shows that the administratrix did not voluntarily accept the Confederate money and bonds—that, in fact, she accepted it under coercion and undue influence; under such circumstances that a court will relieve her from the consequences of the act. The ancient doctrine of the

common law, in regard to threats and duress, was adapted
to a semi-barbarous state of society, and required proof of
actual force, or a reasonable fear of death, mayhem, or loss
of limb.—Co. Inst. vol. 1, 482. But, in more modern times,
adopting the ameliorations of the Roman Code, regard is
had to the sex and age of the person, the relations existing
between the parties, and all the circumstances by which they
are surrounded; and relief is granted in all cases, where
moral coercion, undue influence, abuse of confidence, fraud,
or misrepresentation is shown.—Domat, pt. 1, book 1, tit. 18,
§§ 2, 1245; Merlin, Ques. de Droit, tom. 4, 409; 2 Atk. 190;
14 Vesey, 215; Adams' Equity, 182–3; *Boyd v. Hawkins*,
2 Ired. Eq. 304; *Hatch v. Hatch*, 9 Vesey, 296; *Blackford v.
Christian*, 1 Knapp, 77; 4 Watts & Ser. 323; *Chapman v.
Hamilton*, 19 Ala. 121; 26 N. Y. 9; 5 Hill, 158; 2 Bay, 211;
1 Story's Equity, § 239. These authorities show, that the
payment relied on would be set aside in equity, at the in-
stance of the administratrix herself.—*Kennedy v. Kennedy*,
2 Ala. 571.

4. The pretended payment was a *devastavit*, in which the
purchasers actively and knowingly participated; and the
administratrix being unable to respond, as the bill alleges,
they are liable for the debt, and it may be enforced against
the lands.—*Harris v. Parker*, 41 Ala. 624; *Bondurant v.
Thompson*, 15 Ala. 202; *Dean v. Rathbone*, 15 Ala. 328; Wil-
liams on Executors, 1105; 1 Beavan, 126; 2 Ired. Eq. 594;
8 Wheaton, 421; Tiffany & B. on Trusts, 198.

5. Even if Tayloe acquired title from Bocock, and is to be
regarded as a sub-purchaser from Bocock; yet, having notice
of the facts on which the complainants' rights are founded—
not being entitled to protection as a purchaser for valuable
consideration without notice—the lands held and claimed
by him may be subjected to the vendor's lien.—*Morton's
Adm'r v. Underwood*, 49 Ala. 419; *S. C.*, 44 Ala. 686. But,
under the allegations of the bill, he is not to be regarded as
a sub-purchaser from Bocock: on the contrary, the bill
shows that Bocock "was only the ostensible purchaser"—
that the purchase was made for the joint benefit of himself
and Tayloe, under some private agreement between them;
that each furnished his proportion of the Confederate notes
and bonds received by the administratrix, and each was an
active participant in forcing them on her acceptance, under
the circumstances detailed in the bill.

6. Tayloe can claim no benefit from the compromise be-
tween Bocock and the heirs, by which, for valuable consid-
eration paid by Bocock, in partial reparation of the wrong
done, he was released by the heirs from all further liability,

and the matters in controversy between them were equitably adjusted. But Tayloe was no party to that compromise and settlement, and the heirs expressly reserved the right to proceed against him and the lands which he had bought.

7. The probate order, or decree, under which a conveyance was executed to Bocock, does not conclude these complainants. Such an order is not grantable as "of course." It could only be properly granted in term time, on proof of the fact of payment, and after due notice to the parties interested in contesting the payment. Not having been so granted, it is void, and the complainants are not concluded by it.—Rev. Code, §§ 795, 1618; 3 Phil. Ev. (C. & H. Notes), pp. 922, 1289, note 639, and cases cited.

J. T. JONES, contra.—1. The bill is filed, really and substantially, for equitable relief against a settlement and decree of the Probate Court; and, since it fails to comply with the requirements of the statute (Rev. Code, § 2274), it was properly dismissed.—Patterson v. Harris, 48 Ala. —; Otis v. Dargan, 53 Ala. 178.

2. Independent of the statute, the bill is wanting in equity. Equity will not grant relief against a judgment at law, unless the party complaining can impeach it on grounds of which he could not have availed himself at law, or was prevented from doing so by fraud, accident, or the act of the opposite party, without any fault or negligence on his own part.—Cullum v. Casey, 1 Ala. 356; French v. Garner, 7 Porter, 552; Wilson v. Randall, 37 Ala. 76; Lee & Norton v. Ins. Bank, 2 Ala. 21; Drew v. Hayne, 8 Ala. 438; 9 Ala. 120; 8 Porter, 432; 6 Porter, 24. The complainants had an adequate remedy by appeal; and their failure to avail themselves of that remedy, for which they show no excuse, bars all equitable relief. They say they were minors at the time of the final settlement by the administratrix; but the record shows that they were represented by a guardian ad litem. They complain that the administratrix received payment of the purchase-money in Confederate States notes and bonds; but this does not invalidate the payment, and they may hold her responsible in good money.—Waring v. Lewis, 53 Ala. They complain, also, that they had no notice of Bocock's application for a conveyance; but this court has decided that no notice was necessary.—Dugger v. Tayloe, 46 Ala. 350; also, Matheson v. Hearin, 29 Ala. 217; 6 Porter, 233.

3. When the jurisdiction of the Probate Court, to order a sale of lands belonging to a decedent's estate, has once attached, the sale is valid until set aside, and can not be collaterally impeached on account of errors or irregularities,

which would reverse it on appeal.—*Wyman v. Campbell*, 6 Porter, 219; *Satcher v. Satcher*, 41 Ala. 26; *Warnock v. Thomas*, 48 Ala. 465; *Bofil v. Fisher*, 2 Rich. Eq. 1; Rorer on Judicial Sales, 19.

4. The acceptance of Confederate States bonds or money by the administratrix, under the facts alleged in the bill, does not avoid the payment on the ground of force or duress. *Leeper v. Taylor*, 47 Ala. 221; *Ferguson v. Lowry*, at June term, 1874.

5. The chancellor's decree being correct, the reasons on which it is founded are immaterial.—*Stiles v. Lightfoot*, 26 Ala. 443; *Cave v. Webb*, 22 Ala. 583; *Evans v. Gordon*, 8 Porter, 142; Freeman on Judgments, § 2.

BRICKELL, C. J.—The general rule in a court of equity is, that neither creditors, nor distributees, nor legatees, can maintain a bill against debtors of an estate, to subject debts they may owe to the satisfaction of their demands. There is a want of privity between them and the debtors, and it would introduce confusion in the administration of the assets, and displace the power of the personal representative. There are exceptions to the rule; as where there is collusion between the debtors and the personal representative; or where he is insolvent, and there is just apprehension of loss, if he is permitted to collect them; or, as is said by Chancellor Kent, in *Long v. Majestre*, 1 John. Ch. 306, "where there is some other special case not exactly defined."—1 Dan. Ch. Pr. 322-24; Story's Eq. Pl. §§ 178, 227, 514.

The averments of the present bill are not of collusion between the personal representative and the debtor, but of fraud practiced on her, and misrepresentation to her by the debtor; whereby she was induced to part with the evidences of the debt, and to accept in payment Confederate treasury-notes, and Confederate bonds; and of her insolvency, and the insolvency of her sureties. Conceding that the bill discloses a fraud and misrepresentation which will avoid the payment, the case may be regarded as an exception to the general rule, and the complainants permitted to recover of the debtor the debt the administratrix could recover.

2. The demand preferred is against Tayloe, and the relief prayed is to subject to its satisfaction the lands he acquired from Bocock. The material question is, whether there is a debt due from Tayloe to the administratrix—a debt which would have been assets in her hands for administration, and for the recovery of which she had a remedy, legal or equitable. The question must be answered negatively. Tayloe entered into no contract with the administratrix, nor had

she at any time any evidence of debt on which he was liable as principal debtor. The contract into which he entered was with Bocock : whatever were its duties, they were owing to Bocock alone; and whatever were its benefits, were derived from him. The corresponding obligations of the contract rested on Bocock, and not on the administratrix, who in every respect was a stranger to it.

If it be said, it was Bocock's debt, which was fraudulently paid to the administratrix, and that the complainants have an equity to subject to its payment, *pro tanto*, the lands Tayloe acquired from Bocock, the purchase-money of which was the consideration of the debt; the answer is, the release to Bocock, executed by complainants, was an extinguishment of the debt. The reservation in the release is not of a right to proceed against the lands purchased by Tayloe, for any part of the debt contracted by Bocock. Such a reservation would be inconsistent with, and repugnant to the intention of the parties, as expressed in the release, to acquit Bocock from all liability on account of the debt contracted in the purchase of the lands, and to quiet the title to the lands as divided between him and the complainants. Tayloe was a purchaser from Bocock, and the bill does not negative his payment of the purchase-money. If the complainants could rightfully proceed to subject the lands he purchased to the satisfaction of the purchase-money owing by Bocock, an equity would arise at once in his favor to subject first the lands with which Bocock had not parted, including the lands he had conveyed to the complainants.—*M. M. D. & M. Ins. Co. v. Huder*, 35 Ala. 713. It is manifest, the intention of the parties in the execution of the release would be thereby defeated.

The reservation in the release is not of a right to proceed against the lands purchased by Tayloe, for any part of the debt of Bocock. It is of a right to assert against Tayloe the title of the complainants to the lands he had purchased. How far this reservation can operate, is not now a material question, and we express no opinion in reference to it. If its operation as claimed by the complainants was admitted, their title to the lands is purely legal, and the legal remedy is adequate. The decree of the Court of Probate, declaring Bocock had paid the purchase-money, is simply void, not fraudulent, if the facts are as stated in the bill. Being void, the conveyance executed in pursuance of it is a mere nullity, and is not an impediment to a recovery on the legal title at law.

Proceedings for a sale of lands by a personal representative, in the Court of Probate, are *in fieri*, until the court ren-

[Dugger et al. v. Tayloe et al.]

ders a decree declaring payment of the purchase-money, and directing a conveyance to the purchaser. The title of the heirs or devisees is not divested until conveyance is executed.—*Doe, ex dem. v. Hardy*, 52 Ala. 291. When the purchase-money is fully paid, the conveyance of title may be decreed on the application of the personal representative, or of the purchaser.—Code of 1876, § 2468. The proceedings are *in rem*, and not *in personam*, against the heirs or devisees. The jurisdiction of the court having attached, notice to the heirs, of the application for a decree of conveyance of title, is not essential to its validity. But, if the application is by the purchaser, notice to the executor or administrator is essential, and a decree rendered without it is void. If the fact on which the decree rests, and which it must recite, is true, the personal representative loses all right to maintain an action at law, or suit in equity, for the recovery of the purchase-money, and he becomes chargeable with it in his representative capacity as assets. The statute is silent as to notice; but notice of any judicial proceeding, which is to deprive a party of rights, and impose on him liability, is essential, and is implied from the very nature of the proceeding, though it may not be expressed in the statute which authorizes it. It would be unreasonable to suppose the statute contemplates an *ex-parte* proceeding by the purchaser, whose interest it is to discharge himself from liability and obtain title to the lands.—*Brown v. Wheeler*, 3 Ala. 287 ; *McCurry v. Hooper*,12 Ala. 823 ; *Eslava v. Lepretre*, 21 Ala. 504 ; *Shiver v. Lynn*, 2 How. 43 : *Hollingsworth v. Barbour*, 4 Peters, 466 ; *Lamar v. Gunter*, 39 Ala. 324. The case of *Dugger v. Tayloe*, 46 Ala. 320, announcing a different principle, is overruled.

The decree declaring the payment of the purchase-money, made without notice to the administratrix, being void, and not an obstacle to a recovery by the complainants at law, on their legal title, the result is, in no one of its aspects has the bill equity, and the decree of the chancellor dismissing it must be affirmed.