# Bogart *et al.* v. Bell *et al.*

*Bill in Equity by Heirs to enforce Lien upon Land Purchased by Administrator.*

1. *Sale of land by administrator under order of court; lien for purchase money.*—Under the statutory provisions (Code of 1886, §§ 2123-24), a conveyance of land sold by an administrator under the orders of the probate court cannot be made until it has been judicially ascertained that the entire purchase money has been paid, and the conveyance ordered by the court, according to prescribed methods of procedure; and until this is done, the title of the heirs remains as a security for the unpaid purchase money, which, in a proper case, is enforceable in a court of equity.

2. *Same; when administrator himself becomes the purchaser there must be notice given to the heirs.*—When lands have been sold by the administrator under a probate decree, and he himself becomes the purchaser at such sale, his application for an order of conveyance of the title is regarded as made in his capacity of purchaser, instead of in his representative character, and notice to the heirs is essential to the validity of the order; and when such notice is not given, the probate court acquires no jurisdiction to adjudicate the question of payments, or to order a conveyance to the purchaser.

3. *Same; same; rights of mortgagee and judgment creditor of the administrator.*—Where the administrator purchases land sold by himself under the orders of the probate decree, and without giving notice to the heirs, proceedings are had for the purpose of confirming the sale, and a deed is made thereunder to the administrator as such purchaser, a mortgagee or a judgment creditor of such administrator, is chargeable with notice of the infirmity of his title to the land so pur-

[Bogart *et al.* v. Bell *et al.*]

chased, and can assert no lien to such lands as against the prior rights of the heirs.

4. *Same; when administrator is purchaser at his own sale, he must show that the purchase money has been paid.*—Under the statute (Code of 1886, § 2124) providing for the conveyance of the decedent's land to the purchaser at the sale under a decree of the probate court when the price has been paid, an administrator who seeks a conveyance to himself as purchaser at his own sale must show that he has paid the heirs the purchase money.

5. *Same; same; heirs not estopped by final settlement.*—The mere fact that in his final settlement, the heirs charged the administrator, or suffered him to be charged, with the purchase money of lands bought by him at his own sale held under a decree of the probate court, will not estop them from enforcing the payment of such purchase money out of the land, the same never having been paid.

6. *Same; right to enforce payment of purchase money out of the land; election to rely on the liability of administrator's bond.*—Where on his final settlement, the heirs charged the administrator, or suffered him to be charged, with the purchase money of land bought by him at his own sale, by so charging the administrator, the heirs did not thereby elect to take independent security, by relying on the liability of the sureties on the administrator's bond, in such sort as to deprive themselves of the right to enforce the payment of the purchase money out of the land.—(*Ligon v. Ligon*, 84 Ala. 555; *Wood v. Stanley*, 78 Ala. 348, criticised.)

APPEAL from the Chancery Court of Jackson.
Heard before the Hon. WM. H. SIMPSON.
The facts of the case are sufficiently stated in the opinion.

MARTIN & BOULDIN, for appellants.—1. When lands of a decedent are sold by an administrator under an order of the probate court, the legal title is retained, and remains in the heirs, as security for the purchase money. *Ketchum v. Creagh*, 53 Ala. 224; *Wood v. Stanley*, 78 Ala. 348; *Corbitt v. Clenny*, 52 Ala. 480; *Owen v. Bankhead*, 60 Ala. 457; *Lowery v. Peterson*, 75 Ala. 109; *McCully v. Chapman*, 58 Ala. 325.

2. A valid decree for the conveyance of title, rendered on an application showing payment of the whole of the purchase money, is *res judicata* of such payment.—*Farley v. Dunklin*, 76 Ala. 530; *Jones v. Woodstock Iron Co.*, 95 Ala. 551; *Turrentine v. Daly*, 82 Ala. 205; *Whitlow v. Echols*, 78 Ala. 206; *Watts v. Frazer*, 80 Ala. 186; *May v. Marks*, 74 Ala. 249; *Clancy v. Stephens*, 92 Ala. 577;

[Bogart *et al.* v. Bell *et al.*]

*Wallace v. Nichols*, 56 Ala. 321 ; *Corbitt v. Clenny*, 52 Ala.
480 ; *Landford v. Dunklin*, 71 Ala. 594 ; *Kellam v. Richards*,
56 Ala. 238.

3. No notice to the heirs of the application for an
order of conveyance was necessary, after a final settle-
ment in which the administrator accounted for, and was
charged with, the purchase money.—*Dugger v. Tayloe*,
46 Ala. 320 ; *Ib.*, 60 Ala. 504 ; *Anderson v. Bradley*, 66
Ala. 263 ; *Ligon v. Ligon*, 84 Ala. 555 ; *Nunn v. Norris*,
58 Ala. 202 ; *Pickens v. Yarbrough*, 30 Ala. 408 ; *Strange v.
Keenan*, 8 Ala. 816 ; *Bell v. Craig*, 52 Ala. 215 ; *Rather v.
Young*, 56 Ala. 94 ; *Whitworth v. Oliver*, 39 Ala. 286 ; *May
v. Marks*, 74 Ala. 249 ; *Farley v. Dunklin*, 76 Ala. 530 ;
*Wood v. Stanley*, 78 Ala. 348 ; *Jones v. Woodstock Iron Co.*,
95 Ala. 551.

S. W. TATE, W. H. NORWOOD, and TALLY & PROCTOR,
*contra.*—1. Under the facts alleged in the bill there was
no necessity for an administrator *de bonis non*. The heirs
are the only parties interested and they are the proper
parties complainant.—*Knight v. Blanton*, 51 Ala. 333 ;
*Hudgens v. Cameron*, 53 Ala. 379. *McGhee v. Alexander*,
104 Ala. 116 ; *Hutton v. Williams*, 35 Ala. 503 ; *Wood v.
Stanley*, 78 Ala. 348.

2. The payment of the purchase money is not *res
judicata*. No notice of the report showing the payment
of purchase money was given the heirs, and the order to
convey was without authority and void, and no title
passed by the deed executed under it.—*Ligon v. Ligon*,
84 Ala. 555 ; *Dugger v. Tayloe*, 60 Ala. 504 ; *Anderson v.
Bradley*, 66 Ala. 263 ; *Ketchum v. Creagh*, 53 Ala. 224 ;
Code of 1886, § 2124.

3. There is no estoppel under the facts alleged in the
bill. "The doctrine of estoppel is founded upon the pri-
mary and ultimate aims of the law ; the redress of wrong,
the prevention of fraud and the promotion of the ends
of justice." "The principle is that estoppels are protect-
ive only, and are to be invoked as shields and not as
offensive weapons." Decrees were rendered in favor of
complainants, who still hold the legal title to the lands.
They have failed to do nothing they should have done.
They have done nothing but assert their equitable claim
against the lands, for the payment of the decrees against
the judgment debtor whose estate holds only an imper-

[Bogart *et al.* v. Bell *et al.*]

fect equity to the lands, and there is no intervening innocent holder of a claim to be protected by the enforcement of the doctrine.—*Lindsay v. Cooper*, 94 Ala. 170; *Adler v. Pin*, 80 Ala. 351; *Nelson v. Kelly*, 91 Ala. 569.

4. Though there was no separate accounting, yet the data are given and it may be ascertained how much of the decrees, if not all was for or in consideration of the purchase money of the land. The bill alleges that the decrees represent and are for the balance of purchase money due from the administrator.—*Wood v. Stanley*, 78 Ala. 348.

5. It is not necessary that the bill should allege that the sureties are insolvent. The administrator is required to give bond with sureties. When he sells lands of the estate, he must secure the purchase money and the court has no authority to decree titles to be made until the purchase money has been fully paid.—Code of 1886, §§ 2024, 2117, 2124. "The plain purpose of the statute is that the title shall not pass until the purchase money is paid. It remains capable of assertion; a security for the purchase money, independent of, and distinct from the personal security required of the purchaser. The personal security is merely cumulative, in addition to the security afforded by the retention of the title." Likewise the security afforded by the official bond is cumulative.—*Ketchum v. Creagh*, 53 Ala. 224. The heirs have their remedy against the sureties in an action at law and against the land in equity, and may pursue either or both at the same time.—*Chapman v. Lee*, 64 Ala. 482; *Bunn v. Timberlake*, 104 Ala. 263.

HEAD, J.—Thomas N. Allison, as the administrator of the estate of James L. Allison, deceased, under order of the probate court, sold the lands of said estate for the purpose of division among the heirs at law. The sales were made for part cash and part on time. The administrator, himself, purchased one tract of land, reported the sales, and the same were confirmed by the court. In June, 1891, a final settlement was made, the administrator charged himself, or was charged, with the proceeds of the sales, including the price of the land purchased by him, and decrees were rendered in favor of the complainants and other heirs of the estate. After the settlement was concluded and on the same day, the

[Bogart *et al.* v. Bell *et al.*]

administrator reported the payment of the purchase money, an order for the conveyance of the title was made, and deeds were executed accordingly. No notice of said report was given the heirs. In January, 1895, certain of them filed the bill in this case to enforce a vendor's lien on the land purchased by the administrator, for the payment of the decrees rendered in their favor.

The bill alleges that the funds of the estate, other than the purchase money due from the administrator for the lands purchased by him were applied in payment of debts, expenses of administration and in making payments to the heirs and that the aggregate amount of the decrees rendered on final settlement, constitutes and is the balance of the purchase money due from the administrator. Appellant Bogart claims title under a mortgage executed by Allison in May, 1892, to secure an indebtedness due to him, and the appellants, Washington and Cowan, claim liens under judgments filed and registered in the office of the judge of probate. Thos. N. Allison died intestate December 18th, 1893, and appellant Bogart is his administrator.

Demurrers were interposed to the bill, some of which were sustained, and the bill was amended. To the bill as amended, the same and other demurrers were filed all of which were overruled, and from the decree overruling the same, this appeal is taken.

The statute carefully guards against a conveyance of the title to lands sold by an administrator, under order of the probate court, until the entire purchase money has been paid. The payment must be judicially ascertained and conveyance ordered by the court, according to prescribed methods of procedure conferring upon the court jurisdiction of the matter. Until such ascertainment and order, the title of the heirs remains as a security of the purchase money remaining unpaid, enforceable, in a proper case, in a court of equity. These principles seem to be not controverted by counsel. Their briefs collect the authorities bearing upon them.

In the present case, the administrator was, himself, the purchaser at his own sale. Without paying to the heirs, or into court for distribution amongst them, the purchase money, he made, regularly in other respects, final settlement of his accounts in the probate court, and thereupon charged himself, without objection, or was

[Bogart *et al.* v. Bell *et al.*]

charged *in invitum* (whether the one or the other does not appear) with the amount of the purchase money owing by him. Decrees were rendered severally, against him, in favor of each of the heirs for their respective distributive shares ; which decrees, in fact, according to the averments, represented only the purchase money so charged—all other funds having been otherwise appropriated, as above stated.

Against the relief sought, the defendant interposes the action of the probate court confirming the purchaser's report of payment of the purchase money and ordering titles to be made. Proceedings of that character, instituted by an administrator, in his own behalf, as purchaser, have been well defined by past decisions of this court, as being essentially without the administrator's representative character, and when conducted without notice to the heirs are purely *ex parte*, possessing no legal validity—conferring no jurisdiction of the persons of the heirs upon the probate court.—*Anderson v. Bradley*, 66 Ala. 263 ; *Ligon v. Ligon*, 84 Ala. 555 ; *Dugger v. Tayloe*, 60 Ala. 504. According to the bill, the defendant Bogart, as mortgagee, had notice of the complainants' lien, at the time of the execution of the mortgage, as well as the constructive notice afforded by the infirmity in the chain of title.—*Ketchum v. Creagh*, 53 Ala. 224. The other defendants, judgment creditors, do not occupy as high ground, even, as the mortgagee. The order of the court to make titles cannot, therefore, be regarded for any purpose.

But, it is insisted, the complainants waived their security, and are estopped by charging, or suffering the administrator to be charged, with the purchase money on his final accounting, wherefore no notice to the heirs was necessary to the validity of the order for titles. The proposition, in effect, is that the waiver and estoppel bar the relief sought, and the order to make titles is not a matter of importance. If complainants are estopped by the fact that the purchase money was charged on the final settlement, all consideration of the case may rest at that point. The defendant in such case need not seek to uphold the validity of the order to make titles and the conveyance executed in pursuance thereof, since we are not now, necessarily, concerned with legal titles.

In support of the alleged estoppel we are referred to

[Bogart *et al.* v. Bell *et al.*]

the arguments upon which our former decisions of *Ligon v. Ligon*, 84 Ala. 555, and *Wood v. Stanley*, 78 Ala. 348, proceeded. In *Ligon v. Ligon* the facts were that a stranger was a purchaser of a part of the land and the administrator, of another part. A year after the administrator had made final settlement (and presumably, though not so appearing in the record of the case, charged himself with the purchase money), he reported payment of the purchase money by himself and the other purchaser, and obtained orders for conveyances.· Notice was not given to the heirs of these proceedings. The heirs afterwards moved to vacate these orders, one of the grounds being their want of notice. We held that so far as the purchase by the stranger was concerned, notice was not necessary, but was necessary as to the purchase by the administrator, and as to him, the order was not vacated. Speaking by Justice CLOPTON, we said: "When the administrator becomes the purchaser of real estate sold by himself as such, he occupies antagonistic relations—of purchaser claiming an adverse right, and of administrator, representing the heirs as to the collection and distribution of. the purchase money. Having the right to receive payment as administrator, and being under obligation to pay as such purchaser, presumed payment arises when the purchase money matures, so far as to render him chargeable therewith in the settlement of his administrator's accounts, but not for the purpose of entitling him to a conveyance of title. So long as he continues administrator, and the purchase money is unaccounted for, there is no payment, such as is required by the statute, to authorize the court to order a conveyance of title. When the purchase money becomes due, the heirs have the right to elect whether they will treat it as paid and charge the administrator, or, as unpaid, and resort to the land to enforce its payment. The order that a conveyance be made to him, without notice to the heirs, and the execution of such conveyance, deprives them of this right of election, and divests them of the legal title, without an opportunity of being heard. The statute should not be construed as intending that the administrator may discharge the land from liability for the purchase money, and himself obtain title by an *ex parte* proceeding. In such case, the same necessity exists for notice to the party whose

[Bogart *et al.* v. Bell *et al.*]

rights are to be affected, as for notice to the personal representative when the application is made by the purchaser; and the same person being the administrator and the purchaser, *ex necessitate*, notice must be given to the heirs. When the administrator is the purchaser, at his own sale, the application for an order of conveyance of title, if made by him, should be properly regarded as made in his capacity of purchaser, and not of administrator. In such case, notice to the heirs is essential to the validity of the order. "The right to elect," here spoken of, whether they (the heirs) will treat the purchase money as paid and charge the administrator, or as unpaid, and resort to the land to enforce its payment, is the basis of the contention in favor of the estoppel now alleged. In the earlier cause of *Dugger v. Tayloe, supra*, the question was, the effect of an order to make titles, on application of the purchaser, without notice to the personal representative, who had sold the land under decree. The effect of the decision was that if the personal representative had receive legal notice of the proceeding, the order of the court adjudging that the purchase money had been paid and ordering a conveyance, would have constituted a conclusive adjudication between the purchaser and the administrator and heirs, of the fact of such payment, precluding any further action or proceeding by either against the purchaser for the recovery of the purchase money; and that the administrator would have been, conclusively, chargeable with it in favor of the heirs. Therefore, it was the duty of the administrator and heirs to attend to their rights at the time of that adjudication. So far as the heirs were concerned, they being, through the notice to the administrator, before the court, there can be no doubt of their capacity to waive the security which their legal title afforded them, and stand upon the responsibility of the administrator; and though the purchase money was not, in fact, paid, they would be judicially estopped to allege it, by submitting to confirmation of the report of payment of purchase money and order to convey; and the conveyance, when executed, would divest them of their title.

In the *Ligon* and the present cases, ths administrators, themselves, were the purchasers, and reported payment of the purchase money and asked for titles to

themselves. From the standpoint of equity, if the heirs had been notified, the parties to the proceedings would have been the administrators, in their individual capacities, as purchasers, on the one side, and the heirs on the other. The sole matter for judgment would have been the payment *vel non*, as against the heirs themselves, of the purchase money, for it is upon that fact alone that the order to make titles must be predicated. If the order of the probate court adjudicates anything it necessarily adjudicates that fact, which is the sole matter of judicial investigation. The case of *Dugger v. Tayloe*, and, indeed, the *Ligon Case*, and all others touching the subject, show that the proceeding is a judicial one, the judgment therein having the properties of a binding adjudiciation of the subject matter between the parties. There is, however, a manifest difference in the effect of the adjudication in the two classes of action. Where a stranger is the purchaser and applies for titles, the allegation is that he has paid the purchase money to the administrator. If that allegation be true, he is entitled to the order, and to a deed investing him with the unincumbered title of the heirs, whether the administrator has accounted, or shall ever account, to them or not. The demands of the heirs for the purchase money—whether they have been satisfied or not—are not involved in the proceeding, except in so far as the rights of the purchaser are concerned. The heirs lose the security which the law afforded, and the administrator becomes estopped to say he has not received the purchase money. The remedy of the heirs against the administrator is complete. But where the administrator is himself the purchaser, and applies for titles, the allegation, necessarily, is that he has paid *the heirs* the purchase money, for there is none other to whom he could have paid it.

It inevitably follows, upon these principles, that, in the latter case, the administrator asking for a conveyance to himself, as purchaser, in order to prevail, must show that the demands of the heirs for the purchase money have been satisfied.

We can conceive of no element of satisfaction, either actual or by virtue of equitable or judicial estoppel, in the mere fact that on a final settlement between the administrator and the heirs he charges himself, or is

charged, with the purchase money, which enters into
the personal decrees rendered thereon against the ad-
ministrator, it appearing, as in the present case, that
there was no such confusion of accounts and funds as to
render it impracticable for a court of equity to separate
the purchase money entering into the decrees, from
other funds. No one is affected by such a settlement
but the administrator and heirs. His position is not in
the least altered to his detriment. He owed the pur-
chase money as purchaser. No greater liability was
imposed upon him by having the amount thereof judi-
cially ascertained. It was a mere change of the evi-
dence of his liability, just as the case of any vendor who
reduces the purchase money obligation to judgment. In
no such case, without satisfaction, is the security of the
vendor affected, whether it be a vendor's lien proper, or
a *quasi* mortgage growing out of the contract of sale.
We have, in this case, nothing more nor less, in princi-
ple, than a vendee insisting that he has a perfect title to
the land, discharged of the security, because the vendor
has caused his liability to be judicially ascertained; at
the same time admitting that he has not paid the pur-
chase money. Whether correctly so or not, the case of
*Wood v. Stanley, supra,* where the purchase was by one
of two joint administrators, was disposed of upon the
same principles which govern the case of a purchase by
a stranger, and cannot be accepted as an authority in
support of the estoppel claimed to have arisen out of the
facts of the present case.

The position that complainants, by charging the ad-
ministrator, thereby elected to take independent security,
to-wit, the liability of the sureties on the administrator's
bond, cannot stand any legal test which can be applied
to it. That security existed as soon as the bond was
executed, and yet we have seen how carefully the statute
saved the legal title in the heirs, also, for their security,
until it should be judicially ascertained, in a proceeding
by which they were bound, that the purchase money
had been paid. Suppose there had been no settlement,
and hence, no judicial ascertainment of the administra-
tor's liability, as purchaser, for the purchase money,
and the heirs were proceeding by bill in equity to en-
force their security against the land, if there is any
merit in the proposition that the security was waived

by the bond of the administrator, is it conceivable why the waiver would not be as efficacious in defense of that bill as it is now? In such a case, if there was merit in the point, the administrator would need only to show, by demurrer, that the remedy of the heirs was to charge the administrator on his settlement and proceed against his sureties. The statute is too plain to admit of any such defense. The expression in *Wood v. Stanley* that, "by the rendition of the decrees which fixed a liability on the co-administrator, and the sureties on their official bond, a new security was acquired," is, as we have just stated, inaccurate. The rendition of the decrees judicially measured and ascertained the extent of a liability of the sureties already existing. It was but the application of a remedy to enforce the existing liability. But if it were true that a new security was acquired, the taking of new security, in the absence of an agreement to that effect, would not impair an existing mortgage security created by the contract of the parties. This is not a case of a vendor's lien, strictly speaking. By the contract itself, and the plain mandate of the statute, the heirs retain the title to the lands as security. As we endeavored to make emphatic in *Hester v. Hunnicutt*, 104 Ala. 282, following *Bankhead v. Owen*, 60 Ala. 467, and many other cases therein cited, such a transaction is essentially a mortgage, not a vendor's lien in the proper interpretation of that term. We have decisions which lose sight of the distinction; and *Wood v. Stanley*, and *Ligon v. Ligon*, *supra*, in some of their features, may be regarded as of that class. For some expressions upon the nature of the lien of the vendor, see *Wells v. Cody*, *ante*, p. 278.

We think, upon the averments of the bill, complainants are entitled to relief.

Affirmed.